STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Walter Lee STEWART, Defendant-Appellant.

Supreme Court

*No. 86–0960–CR. Argued January 6, 1988.—Decided March 9, 1988.*

(Also reported in 420 N.W.2d 44.)

For the plaintiff-respondent-petitioner the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Donald T. Lang,* assistant state public defender, Madison.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from an unpublished decision of the court of appeals filed on March 18, 1987, reversing a judgment entered by the circuit court for Milwaukee county, John F. Foley, circuit judge. The court of appeals reversed the conviction of defendant Walter Lee Stewart for attempted robbery, party to a crime, in violation of secs. 943.32(1)(b) (robbery), 939.32(3) (attempt), and 939.05 (party to a crime), Stats. 1985–86. The court of appeals concluded that the trier of fact could not be convinced beyond a reasonable doubt that the defendant would have committed robbery except

for the intervention of another person or extraneous factor pursuant to sec. 939.32(3).

Sec. 939.32(3), Stats. 1985–86, the attempt statute, provides as follows:

> "An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent *and would commit the crime except for the intervention of another person or some other extraneous factor.*" (Emphasis added.)

We interpret sec. 939.32(3) as follows: to prove attempt, the state must prove an intent to commit a specific crime accompanied by sufficient acts to demonstrate unequivocally that it was improbable the accused would desist of his or her own free will. The intervention of another person or some other extraneous factor that prevents the accused from completing the crime is not an element of the crime of attempt. If the individual, acting with the requisite intent, commits sufficient acts to constitute an attempt, voluntary abandonment of the crime after that point is not a defense.

Viewing the evidence in the light most favorable to the prosecution, *Bautista v. State,* 53 Wis. 2d 218, 223, 191 N.W.2d 715 (1981), we conclude that a rational trier of fact could find in this case that the state proved the essential elements of the crime beyond a reasonable doubt. Accordingly we reverse the decision of the court of appeals and affirm the conviction.

## I.

The only evidence at trial was the testimony of the complainant, Scott Kodanko. The complainant testified that he was waiting for a bus at about 4:30 P.M. on a Saturday, after leaving work. He was alone in a three-sided plexiglass bus shelter open to the street in downtown Milwaukee. Two men, Mr. Moore and the defendant, entered the bus shelter while a third man, Mr. Levy, remained outside.

Moore and the defendant stood one to two feet from the complainant. The complainant was in a corner of the shelter, his exit to the street blocked by the two men. Moore asked the complainant if he wanted to buy some cigarettes. The complainant responded that he did not. Moore then said, "Give us some change." When the complainant refused, the defendant said "Give us some change, man." The defendant repeated this demand in an increasingly loud voice three to four times. The complainant still refused to give the two men change. The defendant then reached into his coat with his right hand at about the waist level, whereupon Moore stated something to the effect of "put that gun away." At that point Levy, who had been waiting outside the bus shelter, entered and said to the defendant and Moore "Come on, let's go." Levy showed the complainant some money, stating, "I don't want your money, I got lots of money."

The three men left the bus shelter together and entered a restaurant across the street. A few minutes later Moore returned and made "small talk" with the complainant. The three men were arrested a short while later. It appears from the record that the

32

complainant did not report the incident to the police. The record does not reveal who called the police.

The complainant testified that he felt threatened throughout the encounter, which lasted less than three minutes. None of the men ever touched him or raised a hand to him, and at no time did he attempt to leave the shelter.

In a bench trial, the circuit judge found the defendant guilty of attempted robbery. The circuit judge at first expressed doubt that the state had proved the elements of the charge because he believed the defendant's abandonment of the criminal enterprise negated the intent necessary for attempted robbery. After the parties submitted briefs on this issue, the circuit judge found the defendant guilty.

The court of appeals reversed the conviction, reasoning that "the evidence clearly demonstrates that even if Stewart had the requisite intent to commit attempted robbery, he voluntarily terminated his participation in such a crime."

The defendant makes three arguments urging the court to affirm the court of appeals' reversal of his conviction. First, he argues that the evidence at trial was not sufficient to prove he acted with the requisite intent. Second, he argues that the evidence at trial was not sufficient to prove that he had taken sufficient steps in furtherance of the crime of robbery for his conduct to constitute an attempt because the state failed to prove beyond a reasonable doubt that the intervention of another person or an extraneous factor aborted the commission of the crime. Third, the defendant argues that the state failed to prove beyond a reasonable doubt that he did not voluntarily abandon the commission of the crime. We shall discuss each of the defendant's arguments in turn.

## II.

The defendant claims that the state failed to prove beyond a reasonable doubt that he intended to commit the crime of robbery as defined in sec. 943.32(1)(b), Stats. 1985–86.[1]

In *Hamiel v. State,* 92 Wis. 2d 656, 285 N.W.2d 639 (1979), this court interpreted sec. 939.32(3) as establishing two elements for the crime of attempt: (1) an intent to commit the crime charged; and (2) sufficient acts in furtherance of the criminal intent to demonstrate unequivocally that it was improbable the accused would desist from the crime of his or her own free will. The *Hamiel* court stated the two elements of attempted robbery as follows:

> "In order for the defendant to be found guilty of attempted robbery pursuant to sec. 943.32 and sec. 939.32(2) (the general attempt statute), Stats., it must only be shown that: (1) the defendant's actions in furtherance of the crime clearly demonstrate, under the circumstances that he had the requisite intent to commit the crime of attempted robbery; and (2) that having formed such intent the defendant had taken sufficient steps in furtherance of the crime so that it was improbable that he would have voluntarily terminated his participation in the commission of the crime." 92 Wis. 2d at 666.

---

[1]Sec. 943.32(1)(b), Stats. 1985–86, defines robbery as follows:

"Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a class C felony:

(b) By threatening the imminent use of force against the person of the owner ... with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property."

The defendant argues that viewing the evidence in the light most favorable to the prosecution, this court must conclude that a rational trier of fact could not be convinced beyond a reasonable doubt that he intended to commit robbery. According to the defendant, all of his conduct, including his leaving the bus shelter when he did, demonstrates that he was panhandling, not attempting robbery.

Intent may be inferred from the defendant's conduct, including his words and gestures taken in the context of the circumstances. *Jacobs v. State*, 50 Wis. 2d 361, 366, 184 N.W.2d 113 (1971); *Adams v. State*, 57 Wis. 2d 515, 519, 204 N.W.2d 515 (1973). As we said in *Hamiel*, " [I]n the crime of attempt, it is primarily the acts of the accused which provide evidence of the requisite mental intent .... The acts must ... establish that the accused intended to commit the substantive crime." *Hamiel, supra* 92 Wis. 2d at 663–64.[2]

The acts of the accused, however, "must not be so few or of such an equivocal nature as to render doubtful the existence of the requisite criminal in-

[2]It is difficult sometimes to consider the element of intent apart from the element of conduct because often the sole evidence of intent is the conduct of the accused from which intent must be inferred.

The conduct of the actor thus may serve to prove both elements in the attempt statute. First, the conduct may be the basis for proving the actor's intent to commit the crime. Second, the crime of attempt requires sufficient acts in furtherance of the intent. See Note, *Criminal Law—Attempts—The Damms Case and the General Attempt Statute,* 1960 Wis. L. Rev. 516, 517; Skilton, *The Requisite Act in a Criminal Attempt,* 3 U. Pitt. L. Rev. 308, n. 1 (1937).

tent." *State v. Berry,* 90 Wis. 2d 316, 327, 280 N.W.2d 204 (1979). When a person desists from acts that appear criminal, the intent of the actor may appear equivocal. Desistance thus raises a factual question relevant to the element of intent. As this court said in *Berry,* "Failure, if and by whatever means the actor's efforts are frustrated, is relevant and significant only insofar as it may negate any inference that the actor did in fact possess the necessary criminal intent to commit the crime in question." 90 Wis. 2d at 327.

With these principles in mind we examine the record to determine whether the evidence is sufficient for the trier of fact to conclude that the defendant had the requisite intent.

■

We conclude that the circuit judge as trier of fact could reasonably find that the defendant's repeated statement, "Give us some change," was not merely a request but a demand. Given the setting in which the statement was made, the trier of fact could reasonably find that the demand was backed by threat of force. The circuit judge could find that the defendant's reaching into his coat as Moore said, "Hey, man, put that gun away," demonstrated that the defendant intended to frighten the complainant into handing over his change. The trier of fact could reasonably believe that the defendant exploited the circumstances in order to coerce the complainant into complying with his demand for money.

The trier of fact did not have to accept the inference from the evidence that defense counsel urged, namely, that the defendant was panhandling.

We conclude that the evidence adduced, believed and rationally considered by the trier of fact is sufficient to prove beyond a reasonable doubt that the

defendant intended to compel the complainant to turn over his money under threat of force. Thus the evidence satisfies the first element of attempted robbery—intent to commit robbery.

## III.

The defendant next argues that the evidence at trial was not sufficient to prove that he had committed sufficient acts in furtherance of the crime of robbery for his conduct to constitute an attempt because the state failed to prove beyond a reasonable doubt that the intervention of another person or an extraneous factor aborted the commission of the crime.

The law does not ordinarily punish a person for guilty intentions alone. The attempt statute punishes an individual for acts that further the criminal objective. The most difficult problem in the law of attempts has been to formulate a satisfactory approach or test to describe what constitutes culpable conduct, the second element of the crime of attempt. A significant question in discussing criminal attempt is, what conduct, "when engaged in with a purpose to commit a crime or to advance toward the attainment of a criminal objective, should suffice to constitute a criminal attempt." A.L.I. Model Penal Code, sec. 5.01, comment 1, p. 298 (1985.)[3]

---

[3]The several tests or approaches—such as the preparation theory, the proximity theory, the *locus poenitentiae* or probable desistance theory and the equivocality theory—have been summarized in *Berry v. State, supra* 90 Wis. 2d at 325, n. 7; Note, *Criminal Law—Attempts—The Damms Case and the General Attempt Statute,* 1960 Wis. L. Rev. 516, 523–25; 2 LaFave & Scott, *Substantive Criminal Law,* sec. 6.2 at 31–38 (1986).

Under the probable desistance approach, the accused's conduct constitutes an attempt if, in the ordinary and natural course

Sec. 939.32(3) requires that the accused "does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

The defendant argues that he did not commit sufficient acts in furtherance of the crime to constitute an attempt. He contends that sufficient acts are not committed until the intervention of another person or extraneous factor prevents completion of the crime. If there is no such intervention, the defendant argues, the acts taken toward the criminal end are too few to constitute an attempt. In effect the defendant argues that sec. 939.32(3) requires the state to prove that "the intervention of another person or some other extraneous factor" impeded the defendant's completion of the crime.

---

of events, without interruption from an outside source, it will result in the crime intended. Under the *res ipsa loquitur* (or equivocality) test, the accused's acts must demonstrate unequivocally that the accused is unlikely to withdraw voluntarily from the criminal conduct. The test is premised on the assumption that ambiguous acts are the result of an ambiguous intent. ALI Model Penal Code, sec. 5.01, Comment 5(d), (f) (1985); LaFave & Scott, *Substantive Criminal Law,* sec. 6.2(3), pp. 34–36 (1986).

The court has stated that sec. 939.32(3) embodies the equivocality test and apparently the *Hamiel* court regards the probable desistance and equivocality tests as similar. *Hamiel v. State, supra* 92 Wis. 2d at 664–665.

Commentators describe the Wisconsin statute as a probable desistance test. ALI Model Penal Code, sec. 5.01, Comment 5(d) at 325 (1985); Hoeber, *The Abandonment Defense to Criminal Attempt and Other Problems of Temporal Individuation,* 74 Calif. L. Rev. 377, 396, n. 69 (1986); 2 LaFave & Scott, *Substantive Criminal Law,* sec. 6.2(2) at 34 (1986).

The court of appeals apparently concluded that the complainant's resistance was not an "extraneous factor," and that Levy's entering the bus shelter was not the "intervention of another person," within the meaning of sec. 939.32(3). Based on that conclusion, the court of appeals reasoned that the defendant's termination of the robbery must have been voluntary because no extraneous factor beyond his control motivated him to desist. Because the defendant did not consummate the robbery, and no force beyond his control prevented him from doing so, the court of appeals concluded there is insufficient evidence to find the defendant would have committed robbery "except for the intervention of another person or some other extraneous factor."

We disagree with the court of appeals interpretation of sec. 939.32(3). This court has concluded that sec. 939.32(3) does not require the state to prove the existence of an extraneous factor as a third element of the crime of attempt.[4]

---

[4]Other courts have concluded that the attempt statute does not require proof of a third element. In *People v. Dillon,* 34 Cal. 3d 441, 455, 194 Cal. Rptr. 390, 668 P.2d 697 (Cal. 1983), the court wrote:

"[P]roperly understood, our reference to interruption by independent circumstances rather than the will of the offender merely clarifies the requirement that the act be unequivocal. It is obviously impossible to be certain that a person will not lose his resolve to commit the crime unless he completes the last act necessary for its accomplishment. But the law of attempts would be largely without function if it could not be invoked until the trigger was pulled, the blow struck or the money seized. If it is not clear from a suspect's acts what he intends to do, an observer cannot reasonably conclude that a crime will be committed; but when the acts are such that any rational person would believe that a crime is about to be consummated absent an intervening

In *Hamiel, supra* 92 Wis. 2d at 667, the court said, "[W]hether another person or some other intervening extrinsic force are present and actually frustrate the accused person's attempt is not material to the inquiry of the defendant's guilt." Similarly in *State v. Berry,* 90 Wis. 2d 316, 280 N.W.2d 204 (1979), the court stated that the requirement of sec. 939.32(3) that an actor would commit the crime except for the intervention of another person or some other extraneous factor "does not add an additional, separate requirement that the attempt be thwarted by an outside force." 90 Wis. 2d at 326.

The court has stated that the statutory language "necessitates a determination whether under all the circumstances it was too late for the person to have repented and withdrawn." *Berry, supra* 90 Wis. 2d at 327. The import of sec. 939.32(3) is, according to this court, that "the defendant's conduct must pass that point where most men, holding such an intention as the defendant holds, would think better of their conduct and desist." *Berry, supra* 90 Wis. 2d at 326, quoting Skilton, *The Requisite Act in a Criminal Attempt,* 3 U. Pitt. L. Rev. 308 (1937).

---

force, the attempt is under way, and a last-minute change of heart by the perpetrator should not be permitted to exonerate him."

See also *Fryer v. Nix,* 775 F.2d 979, 994 (8th Cir. 1985):

"The requirement that the act committed in furtherance of the crime be such that it render voluntary termination improbable does not enshrine a last-minute change of heart as a bar to a finding that an attempt was committed. Rather, such a requirement exists so that it is evident that the act committed be of an unequivocal nature: the act must be of such a nature that it is probable that the defendant intended to complete the crime. Once such an act is committed, the crime of attempt is complete, and later termination, though voluntary, is irrelevant."

The court's interpretation of sec. 939.32(3) as not requiring the state to prove that the accused was actually interrupted by the intervention of another person or an extraneous factor comports with legislative intent. The legislature intended to punish individuals who have exhibited a dangerous propensity toward committing a crime because these individuals are as dangerous as a person who completes the crime contemplated. See Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350, 364, n. 71, quoted in *State v. Damms,* 9 Wis. 2d 183, 188, 100 N.W.2d 592 (1960). See also Stuart, *The Actus Reus in Criminal Attempts,* 1970 Crim. L. Rev. 505, 511; LaFave & Scott, *Substantive Criminal Law,* sec. 6.2(b), pp. 22–23 (1986).

Because the legislature intended sec. 939.32(3) to address the accused's manifest dangerousness, we conclude that the legislature did not intend to require an actual interruption of the accused's conduct by intervention of another person or an extraneous factor in order for there to be an attempt under the statute. When the accused's acts demonstrate unequivocally that the accused will continue unless interrupted, that is, when the acts demonstrate that the accused will probably not desist from the criminal course, then the accused's dangerousness is manifest. Accordingly we reject defendant's assertion that sec. 939.32(3) requires the state to prove the intervention of another person or an extraneous factor.

The purpose of the language in sec. 939.32(3) relating to intervention of another person and extraneous factor is to denote that the actor must have gone far enough toward completion of the crime to make it improbable that he would change his mind

41

and desist. The conduct element of sec. 939.32(3) is satisfied when the accused engages in conduct which demonstrates that only a circumstance beyond the accused's control would prevent the crime, whether or not such a circumstance actually occurs. An attempt occurs when the accused's acts move beyond the incubation period for the crime, that is, the time during which the accused has formed an intent to commit the crime but has not committed enough acts and may still change his mind and desist. In other words the statute requires a judgment in each case that the accused has committed sufficient acts that it is unlikely that he would have voluntarily desisted from commission of the crime.[5]

The *Hamiel* court suggested that the accused's acts be viewed as a film in which the action is suddenly stopped, so that the audience may be asked to what end the acts are directed. "If there is only one reasonable answer to this question then the accused has done what amounts to an 'attempt' to attain that end. If there is more than one reasonably possible answer, then the accused has not yet done enough." *Hamiel, supra* 92 Wis. 2d at 665, n. 4, quoting Turner, *Attempts To Commit Crimes,* 5 Cambridge L.J. 220, 237–38 (1934). The aim of this "stop the film" test is to determine whether the accused's acts unequivocally demonstrate an intent to commit the crime rendering voluntary desistance from the crime improbable.

If the defendant had been filmed in this case and the film stopped just before Levy entered the bus stop and the three men departed, we conclude that a trier

---

[5]See Note, *Criminal Law—Attempts—The Damms Case and the General Attempt Statute,* 1960 Wis. L. Rev. 516, 527–28.

of fact could find beyond a reasonable doubt that the defendant's acts were directed toward robbery. The film would show the defendant demanding money and appearing to reach for a gun. This evidence is sufficient to prove that the defendant had taken sufficient steps for his conduct to constitute an attempted robbery.

In *Jacobs v. State,* 50 Wis. 2d. 361, 367–68, 184 N.W.2d 113 (1971), a case involving attempted robbery, the court applied a similar analysis of the accused's acts:

> "The attempt was complete when the defendant, with intent to commit a robbery, took action, to wit, pointing the gun and demanding the money, in furtherance of such intent. Pointing the gun and telling the store proprietor to 'give me that sack' were unequivocal acts, accompanied by intent, sufficient to complete the crime of attempted robbery. The unanticipated set of circumstances, including the store owner stating he had no money and to go ahead and shoot, ... the accomplices suggestion that they leave and his leaving, combined to influence the defendant to abandon the robbery, but *only after attempted armed robbery had been unequivocally completed.*" (Emphasis supplied.)

We conclude that the evidence was sufficient for the trier of fact to find beyond a reasonable doubt that the defendant's conduct in furtherance of the defendant's intent to commit robbery had proceeded far enough toward completion of the crime to make it improbable that the defendant would desist. The state proved the second element of the crime of attempt.

## IV.

The defendant's final argument is that his voluntary abandonment of criminal conduct after the attempt was "complete" but before the crime of robbery was consummated excuses him from criminal liability.

Sec. 939.32(3) does not expressly make voluntary abandonment a defense. The defendant contends that the *Hamiel* case implies that sec. 939.32(3) recognizes the affirmative defense of voluntary abandonment. In *Hamiel* the court said:

> "[W]hether another person or some other intervening extrinsic force are present and actually frustrate the accused person's attempt is not material to the inquiry of the defendant's guilt. The key inquiry is a determination of whether, under all the facts and circumstances, the accused was likely to voluntarily cease and desist from completion of the criminal act. There is no need to show a causal connection between any extrinsic force and the frustration of the defendant's plan. We hold there was sufficient evidence in the record for the jury to conclude beyond a reasonable doubt that the *defendant did not voluntarily abandon his plan to commit the crime of attempted robbery.*" 92 Wis. 2d at 667. (Emphasis supplied.)

*Hamiel* did not embrace the affirmative defense of voluntary abandonment. Rather, as we have explained, this language in *Hamiel* describes the acts sufficient to constitute an attempt. Contrary to the defendant's assertions *Hamiel* was not referring to voluntary abandonment after sufficient acts had been committed to constitute an attempt. *Hamiel* was

44

referring to voluntary desistance during that period when the accused's acts are still equivocal.

The defendant finally argues that this court should interpret sec. 939.32(3) as incorporating the affirmative defense of voluntary abandonment.[6] He urges that recognition of the defense is good public policy. Although the traditional common law view is that voluntary abandonment is not a defense, the modern trend is toward recognition of the defense. The drafters of the Model Penal Code included a provision that voluntary abandonment is an affirmative defense. A.L.I. Model Penal Code, sec. 5.01(4), pp. 296–297 (1985). Several state legislatures have adopted the defense. Following the reasoning of the Code, Professors LaFave and Scott favor the defense, concluding that recognition of the defense tends to encourage the actor to desist and escape penalty. They further assert that a true voluntary abandonment tends to negative the dangerousness of the actor. LaFave & Scott, *Substantive Criminal Law,* sec. 6.3(b)(2), pp. 53–57 (1986). See also Rotenberg, *Withdrawal as a Defense to Relational Crimes,* 1962 Wis. L. Rev. 596, 599–600.

We conclude that if the legislature had intended voluntary abandonment to be a defense, it would have expressly said so. We do not believe this court should

---

[6]For commentators' discussion of whether the statutory language "and would commit the crime except for the intervention of another person or some other extraneous factor" incorporates the defense, see LaFave & Scott, *Substantive Criminal Law,* sec. 6.3, n. 103, p. 54, n. 126, p. 56 (1986); Rotenberg, *Withdrawal as a Defense to Relational Crimes,* 1962 Wis. L. Rev. 596, 598; Note, *Criminal Law—Attempts—The Damms Case and the General Attempt Statute,* 1960 Wis. L. Rev. 516, 526, n. 51.

distort the statutory language to incorporate the defense. The public policy arguments in favor of the defense are better addressed to the legislature than to the court.

For the reasons set forth we conclude that the decision of the court of appeals should be reversed and the judgment of conviction of the circuit court affirmed.

*By the Court.*—The decision of the court of appeals is reversed.