# COURT OF APPEALS
## DECISION
## DATED AND FILED

## December 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP68-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF311

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TOMMIE LEE CARTER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: T. CHRISTOPHER DEE and JOSEPH R. WALL, Judges. *Order reversed and cause remanded with directions*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Tommie Lee Carter appeals his judgment of conviction entered after he pled guilty to attempted robbery with the threat of force. He also appeals the order denying his postconviction motion without a hearing. Carter seeks to withdraw his plea on the grounds that it was not knowing, intelligent, and voluntary because the nature of the offense was never adequately explained to him. We agree, and therefore reverse the order denying his postconviction motion, and remand this matter for an evidentiary hearing on his claim.[1]

## BACKGROUND

¶2     The charge against Carter stems from an incident that occurred at a gas station located on East North Avenue in Milwaukee. According to the complaint, J.J.R. was at the gas station to do some electrical repair work. When J.J.R. walked out of the gas station to his work van, a male followed him, produced a rifle from his clothing, pointed it at J.J.R. and demanded money. J.J.R. grabbed the barrel of the rifle and began struggling with the suspect.

¶3     J.J.R. was able to get the rifle away from the suspect. Being a hunter and familiar with firearms, J.J.R. worked the pump to eject the shell from the rifle, but nothing came out. J.J.R. then pointed the gun at the ground and pulled the trigger, but the rifle did not discharge. J.J.R. threw the rifle on the ground away from the suspect, and told him to "just go away." The suspect picked up the rifle and fled on foot, and J.J.R. then called the police.

---

[1] While Carter appeals both his judgment of conviction and the order denying his postconviction order, we address only the order for the reasons set forth in this opinion.

¶4 The police were able to obtain video camera surveillance from the gas station, showing the incident as described by J.J.R. They released a picture of the suspect to the media, and received multiple calls identifying the suspect as Carter. The callers included Carter's parole agent as well as a former prison guard who knew Carter from when he was previously incarcerated. The police then showed J.J.R. a photo array that included Carter, and J.J.R. identified Carter as the person who had attempted to rob him at the gas station.

¶5 Carter was arrested and charged with attempted armed robbery with a habitual criminality repeater enhancer. Carter entered into a plea agreement whereby the charge was reduced to attempted robbery with the threat of force, and the habitual criminality repeater enhancer was removed. Carter subsequently entered a no contest plea pursuant to that agreement in September 2019.[2]

¶6 During the plea colloquy, the trial court explained the elements of the offense by referring to the plea questionnaire and the addendum to the plea questionnaire, which included the jury instruction listing the elements of the crime. The court confirmed that Carter's counsel had gone over all of the plea paperwork with him, and that Carter understood it. However, the jury instruction that was attached to the plea paperwork was for robbery as a completed crime, as opposed to attempted robbery.

¶7 The matter proceeded to sentencing in October 2019. The trial court imposed the maximum term of imprisonment of seven and one-half years,

---

[2] The Honorable T. Christopher Dee took Carter's plea and imposed sentence; we refer to him as the trial court. Due to judicial rotation, Carter's postconviction motion was decided by the Honorable Joseph R. Wall; we refer to him as the postconviction court.

bifurcated as five years of initial confinement followed by two and one-half years of extended supervision. *See* WIS. STAT. § 943.32(1)(b); WIS. STAT. § 939.32(1g); WIS. STAT. § 939.50(3)(e) (2019-20).[3]

¶8 Carter subsequently filed a postconviction motion seeking to withdraw his plea. Specifically, Carter argued that his plea was not knowingly, intelligently, and voluntarily entered because he was unaware of the second element of attempted robbery—proving that Carter "did acts toward the commission of the crime of [robbery] which demonstrate unequivocally, under all of the circumstances, that [Carter] intended to and would have committed the crime of [robbery] except for the intervention of another person or some other extraneous factor." *See* WIS JI—CRIMINAL 580. Carter asserted that the trial court erred by relying on the plea questionnaire which had the wrong jury instruction attached, and further, that the court never stated the correct elements for attempted robbery on the record, nor did it direct Carter's trial counsel to state the correct elements for the record.

¶9 The postconviction court rejected Carter's argument. It found that the record demonstrated that the trial court had explained to Carter "the essential elements the State would have to prove at a trial beyond a reasonable doubt to convict him of an attempt." Therefore, the postconviction court denied Carter's motion without a hearing. This appeal follows.

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

4

**DISCUSSION**

¶10 In seeking plea withdrawal after sentencing, a defendant "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). One way to establish a manifest injustice is to show that the plea was not knowingly, intelligently, and voluntarily entered. *Id.*

¶11 This is based on the requirement that before the trial court accepts a guilty or no contest plea, it must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted" and "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." WIS. STAT. § 971.08(1)(a)-(b). This is a "mandatory requirement" which the trial court undertakes with the defendant, through a personal colloquy, to "ascertain his understanding of the nature of the charge[.]" *State v. Bangert*, 131 Wis. 2d 246, 260, 389 N.W.2d 12 (1986). A plea is not considered to be voluntary "unless the defendant has a full understanding of the charges against him [or her]." *Id.* at 257.

¶12 In that vein, a defendant's motion to withdraw his or her plea on the grounds that it was not knowing, intelligent, or voluntary must meet a two prong test: the defendant must (1) "make a prima facie showing of a violation of WIS. STAT. § 971.08 or other court-mandated duty"; and (2) "allege that the defendant did not, in fact, know or understand the information that should have been provided during the plea colloquy." *State v. Cajujuan Pegeese*, 2019 WI 60, ¶26, 387 Wis. 2d 119, 928 N.W.2d 590 (citation omitted). If the defendant satisfies both of these prongs, "then that defendant is entitled to an evidentiary hearing,

also known as a ***Bangert*** hearing." ***Cajujuan Pegeese***, 387 Wis. 2d 119, ¶27 (internal quotation marks omitted). Whether a defendant has met those prongs are questions of law that we review *de novo*. ***Brown***, 293 Wis. 2d 594, ¶21.

¶13 Pursuant to WIS. STAT. § 939.32(3), the attempt to commit a crime has two elements: "(1) an intent to commit the crime charged; and (2) sufficient acts in furtherance of the criminal intent to demonstrate unequivocally that it was improbable the accused would desist from the crime of his or her own free will." ***State v. Stewart***, 143 Wis. 2d 28, 34, 420 N.W.2d 44 (1988). Specifically, for the offense of attempted robbery, the State must prove that the defendant (1) intended to commit robbery; and (2) "did acts toward the commission of the crime" of robbery which "demonstrate unequivocally, under all of the circumstances, that the defendant intended to and would have committed" the robbery "except for the intervention of another person or some other extraneous factor." WIS JI—CRIMINAL 580. Because the incorrect jury instruction was included in the plea paperwork, it was incumbent on the trial court to fully explain the elements of the crime to which Carter was pleading—in particular, the second element, as it pertains to the attempt element of the crime—in order to comply with WIS. STAT. § 971.08. *See **Brown***, 293 Wis. 2d 594, ¶21.

¶14 The State asserts that the trial court adequately explained the second element during the colloquy when it described that the State would have to prove that Carter, "with intent to steal … attempted to take property from the person of J.J.R., the owner, by threatening the imminent use of force against that person, and with intent thereby to compel the owner of the property to acquiesce in the taking or carrying away of said property." Indeed, the State points out that "[t]he intervention of another person or some other extraneous factor that prevents the

accused from completing the crime is not an element of the crime of attempt." *See Stewart*, 143 Wis. 2d at 31.

¶15    Rather, charging a defendant for an attempted crime seeks to "punish[] an individual for acts that further the criminal objective," because "[t]he law does not ordinarily punish a person for guilty intentions alone." *Id.* at 37. Thus, the second element in the attempt statute focuses on "what conduct, 'when engaged in with a purpose to commit a crime or to advance toward the attainment of a criminal objective, should suffice to constitute a criminal attempt.'" *See id.* (citation omitted).

¶16    Put another way, an attempted criminal offense does not occur until "the accused's acts move beyond … the time during which the accused has formed an intent to commit the crime but has not committed enough acts and may still change his mind and desist." *See id.* at 42. "The most difficult problem in the law of attempts has been to formulate a satisfactory approach or test to describe what constitutes culpable conduct" to prove that second element. *Id.* at 37. To that end, the language in WIS JI—CRIMINAL 580 explains how the second element is established: "the intervention of another person or other extrinsic force [that] prevents completion of the criminal act … is indicative of the fact that the defendant intended to commit the crime because it shows that he did not voluntarily cease from completion of the crime[.]" *Hamiel v. State*, 92 Wis. 2d 656, 665, 285 N.W.2d 639 (1979). However, "[t]he conduct element of [§] 939.32(3) is satisfied when the accused engages in conduct which demonstrates that only a circumstance beyond the accused's control would prevent the crime, whether or not such a circumstance actually occurs." *See Stewart*, 143 Wis. 2d at 42. Thus, the second element of attempt "requires a judgment in each

case that the accused has committed sufficient acts that it is unlikely that he would have voluntarily desisted from commission of the crime." ***Id.***

¶17     Therefore, the extraneous factor language of WIS JI—CRIMINAL 580, while not an element of attempt, assists in explaining the nature of a criminal attempt offense.  Carter alleges that he was unaware of the second element of attempted robbery, and that the trial court's description of the offense during the plea colloquy did not adequately explain the nature of that offense.

¶18     The State contends that the "stop-the-film" test should be applied to resolve this issue.  In that test, the accused's acts are to be "viewed as a film in which the action is suddenly stopped, so that the audience may be asked to what end the acts are directed." *See **Stewart***, 143 Wis. 2d at 42.  If it is determined that there is "only one reasonable answer to this question then the accused has done what amounts to an 'attempt' to attain that end.  If there is more than one reasonably possible answer, then the accused has not yet done enough." ***Id.*** (citation omitted).  The goal of the "stop-the-film" test is to determine "whether the accused's acts unequivocally demonstrate an intent to commit the crime rendering voluntary desistance from the crime improbable." ***Id.***

¶19     However, this test has been employed where the issue was the sufficiency of the evidence.  *See **id.*** at 37; ***Hamiel***, 92 Wis. 2d at 667.  In contrast, here the issue is whether Carter understood the elements of the crime to which he was entering a plea.  Therefore, the stop-the-film test is not applicable in this case.

¶20     Instead, we find ***State v. Howell***, 2007 WI 75, 301 Wis. 2d 350, 734 N.W.2d 48, instructive.  In ***Howell***, the issue before our supreme court was whether the trial court's explanation during the plea colloquy of the offense, where the defendant was charged as a party to a crime, was sufficient. ***Id.***, ¶37.  The

8

supreme court held that it was not, stating that the trial court's explanation by "[s]imply stating that the State would have to prove that [the defendant] 'assisted' or 'intentionally assisted' the shooter" was not sufficient to explain the nature of party to a crime liability. *Id.*, ¶48.

¶21 We conclude that in this case, the trial court's basic explanation of the nature of the offense of attempted robbery during the colloquy—that Carter intended to steal J.J.R.'s property—did not fully encompass the requirements of the second element relating to attempt. As a result, it did "not amount to a clear explanation of the charge." *See id.*, ¶48.

¶22 Therefore, Carter has established a prima facie case that there was a violation of WIS. STAT. § 971.08, and has sufficiently alleged that he did not know or understand the information regarding the second element of attempt that should have been provided at the plea hearing. *See Brown*, 293 Wis. 2d 594, ¶39. Having satisfied both of these prongs, Carter is entitled to a *Bangert* evidentiary hearing. *See Cajujuan Pegeese*, 387 Wis. 2d 119, ¶27.

¶23 Accordingly, we reverse the order of the postconviction court denying Carter's postconviction motion, and remand this matter for an evidentiary hearing. We note that with this instruction we are not determining whether the postconviction court should ultimately grant or deny Carter's motion to withdraw his guilty plea.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9