SMITH *v.* STATE

No. 40828          May 19, 1958          102 So. 2d 699

504

*Lawrence D. Arrington,* Hattiesburg, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ARRINGTON, J.

The appellant, Leodis Smith, was jointly indicted with Johnny Bond for the crime of assault with intent to kill and murder. Severance was granted and the appellant was tried and convicted and sentenced to seven years in the State penitentiary, from which judgment he appeals.

The record discloses that on the night of September 17, 1957, Deputy Sheriff L. G. Lee and Roland Cranford, a Federal officer, accompanied by the sheriff and another deputy, under the authority of a search warrant for intoxicating liquor, went to the home of the appellant, which was located at Palmer's Crossing in Forrest County. Deputy Sheriff Lee and Cranford, finding the house locked and no one at home, gained entrance to the dwelling through a window. It was a dark night and they did not turn the lights on in the dwelling, but proceeded to search the premises using a flashlight. They put the search warrant on a chest in the residence and then remained in the unlighted house for a considerable period of time. The record does not disclose if anything was found by the search.

The appellant ate his supper with one Maggie K. Knight, who lived next door, and when he arrived there she informed him that someone had been flashing a light around inside his residence. The appellant immediately left and made an investigation of the residence to ascertain who was in his home. He got his coindictee, Johnny Bond, to accompany him. Bond drove his automobile in front of the home and parked in such a manner as to throw his headlights on the front door so that he would be in a position to see who came out of the house. The

appellant, armed with a 16-gauge shotgun, went to the rear of the house and fired the gun three times. No one came out. Bond then procured a 12-gauge shotgun and assisted the appellant by shooting the windows out on the east and west sides of the house, but still no one came out. The appellant and Bond then moved to the front of the house where several shots were fired near the front door. At this time, Deputy Sheriff Lee testified that he hollered out, "This is officers, this is the sheriff's officer," but the shooting continued. Up until this time the front door had been closed, and then Officer Cranford took his pistol and broke the glass out, and called out, "Federal officer, this is the law, this is the law." There were some shots fired after this, then Deputy Sheriff Lee fired his pistol three times and they heard someone running.

Cranford testified that he kicked the front door out and they came out but did not see anyone; that on the following Saturday, the Sheriff and Cranford arrested appellant, and Cranford obtained an oral confession from him, which he later reduced to a written statement in his office. The written statement was not offered in evidence. Cranford also testified that the appellant told him that he took his meals next door and while he was there eating his supper, Maggie Knight told him that "the law has been to your house"; that he left the house immediately and he saw Johnny Bond and asked him to help him, which he did, as set out before. Cranford also testified that the appellant told him that he shot in the house to frighten or run out whoever was in there, and that the appellant gave Bond permission to shoot out the glasses in the house; that when he heard someone call out, "sheriff's officer, this is the law," and when they shot the pistol three or four times, he ran.

There was also testimony on the part of the State that the shotguns were fired at a distance of sixty feet from the house, and that the size of the shot was number eight,

or bird shot. Neither Lee nor Cranford were hit by the shots fired by the appellant and Bond.

██ ██ The appellant assigns as error and argues that the court erred in refusing the requested peremptory instruction for the appellant. Of course, by virtue of the search warrant the officers had a legal right to break into the house and make the search for intoxicating liquor even though the house was locked and no one was at home. They were entitled to a reasonable time to make the search, but we are of the opinion that they did not have a right to remain in the house in darkness for an unreasonable length of time as they did. ██ ██ According to the record, they were in the home from about ten o'clock until midnight. The record also disclosed that Maggie Knight testified that she told the appellant that somebody was in his house flashing a light; that she did not know who it was. This statement is uncontradicted in the record, nor did the State make any effort to impeach this statement. The officers testified that it was a dark night and they did not turn on the lights in the house, and it is unreasonable, in the absence of any proof, to believe that she knew that public officers were in the home.

The appellant testified in his own behalf that he had never been convicted of any crime. Evidence in his behalf was introduced that his general reputation for peace and violence was good.

Officers are to be commended for their vigilance in enforcing the law, but it is to be remembered here that they were not seeking a desperate felon, but only a misdemeanant.

We are of the opinion that the evidence in this case is insufficient to support a finding beyond a reasonable doubt that the appellant's intent and purpose was to kill and murder, and that the requested peremptory should have been granted.

Reversed and appellant discharged.

*Roberds, P. J.,* and *Lee, Ethridge* and *Gillespie, JJ.,* concur.