STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael JOHNSON, Defendant-Appellant.†

Court of Appeals

*No. 91-2689-CR. Submitted on briefs August 11,
1992.—Decided September 15, 1992.*

(Also reported in 491 N.W.2d 110.)

†Petition to review denied.

175

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William M. FitzGerald* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. Michael A. Johnson appeals his bench-trial conviction of possession of a short-barreled shotgun in violation of section 941.28, Stats.[1] "Shotgun" is defined by the statute as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder or hip and designed or redesigned and made or remade to use the energy of a propellant in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

---

[1]Section 941.28(2), Stats., is the specific provision that outlaws the possession of a short-barreled shotgun. It provides:

> No person may sell or offer to sell, transport, purchase, possess or go armed with a short-barreled shotgun or short-barreled rifle.

Section 941.28(1)(d), Stats. The sole question presented by this appeal is whether a shotgun whose firing pin has been removed is within the statute's prohibition. Although other jurisdictions have dealt with similar issues under their own statutes, Annotation, *Fact That Gun Was Broken, Dismantled, or Inoperable as Affecting Criminal Responsibility Under Weapons Statute,* 81 A.L.R.4th 745 (1990), this is an issue of first impression in Wisconsin. We affirm.

■ The facts in this case are undisputed. Johnson possessed a short-barreled shotgun.[2] According to the State Crime Laboratory Report, to which the parties stipulated, the shotgun's firing pin was "missing," and, therefore, the gun could not "be fired in its present condition." The trial court held that Johnson's shotgun met this definition, noting in its oral decision that section 941.28(1)(d), Stats., does not require "that the shotgun be capable of being fired at the time it was possessed." Although we must ascertain independently a statute's meaning and application, *see Wellnitz v. Board of Police & Fire Comm'rs.,* 151 Wis. 2d 306, 309–310, 444 N.W.2d 412, 414 (Ct. App. 1989), we agree.

---

[2]The weapon was described by the State Crime Laboratory report stipulated to by the parties as a "Stevens model 94C 12 gauge single shot shotgun, having no serial number . . . [whose] barrel has been cut off to a length of approximately 10 inches and [whose] stock has been cut off." The gun had an "overall length" of "16½ inches." Section 941.28(1)(c), Stats., defines a "short-barreled shotgun" as a "shotgun having one or more barrels having a length of less than 18 inches measured from closed breech or bolt face to muzzle or a shotgun having an overall length of less than 26 inches."

 Statutes are "expressions of policy arising out of specific situations and addressed to the attainment of particular ends." FRANKFURTER, SOME REFLECTIONS ON THE READING OF STATUTES, 47 Colum. L. Rev. 527, 533 (1947). Absent a conflict with either the United States or Wisconsin constitutions, we must accept legislative policy and apply the statute as the legislature intended. *See Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537–538, 345 N.W.2d 389, 394 (1984). Legislative intent is generally revealed by the statute's face. *See id.,* 117 Wis. 2d at 538, 345 N.W.2d at 394. If, however, the statutory language is unclear we may analyze the statute's "scope, history, context, subject matter and object." *Ibid.*

Section 941.28(1)(d), Stats., is hardly a concise expression of legislative policy. Nevertheless, the statutory mandate is clear when the provision is reduced to its elements. Section 941.28(1)(d) operates to prohibit the possession of a shotgun, either originally fabricated or subsequently modified to be "short-barreled," that:

1. was "designed" "and intended to be fired from the shoulder or hip," *or* was "redesigned" "and intended to be fired from the shoulder or hip"; *and*

2. was "made" "and intended to be fired from the shoulder or hip," *or* was "remade" "and intended to be fired from the shoulder or hip";

as long as the weapon also:

A. was "designed" "to use the energy of a propellant in a fixed shotgun shell to fire" ball shot or a projectile, *or* was "redesigned" "to use the energy of a propellant in a fixed shotgun shell to fire" ball shot or a projectile; *and*

B. was "made" "to use the energy of a propellant in a fixed shotgun shell to fire" ball shot or a projectile, *or* was "remade" "to use the energy of a propellant in a fixed shotgun shell to fire" ball shot or a projectile.

■

Clearly, Johnson's shotgun was "designed" and "made" with all the necessary components, including a firing pin, "to be fired from the shoulder or hip."[3] It was also "designed" and "made" with all the necessary components, including a firing pin, "to use the energy of a propellant in a fixed shotgun shell to fire" ball shot or a projectile. Thus, we need not consider whether the weapon was also "redesigned" or "remade" to be fired, since the statute imposes liability with respect to fabrication in the disjunctive; the weapon need only be "designed" *or* "redesigned" and "made" *or* "remade" to be fired. We must, however, determine whether the element that the shotgun be "*intended* to be fired from the shoulder or hip" was proven even though the weapon was not operable.

■

Whether Johnson's shotgun was "intended to be fired from the shoulder or hip" within the meaning of section 941.28(1)(d), Stats., turns on whether the pertinent intent is, on the one hand, that of the person who either devises the shotgun (the designer or redesigner) or

---

[3]The only proof on this issue was the stipulated-to crime laboratory report, which noted that the firing pin was "missing." We may thus reasonably assume, as the trial court presumably did, that this meant that a firing pin had once been present. *See Mueller v. Mizia*, 33 Wis. 2d 311, 319, 147 N.W.2d 269, 274 (1967); *In re Villwock*, 142 Wis. 2d 144, 149, 418 N.W.2d 1, 3 (Ct. App. 1987). In any event, Johnson does not argue that the shotgun was either designed or made without a firing pin.

180

assembles it (the maker or remaker), or, on the other hand, that of the person who possesses it. Although the word "intended" does not, standing alone, resolve this issue, and thus is, in a sense, ambiguous, its meaning in context is clear. *See State v. Bruckner,* 151 Wis. 2d 833, 845, 447 N.W.2d 376, 381 (Ct. App. 1989) (context may clarify word that, by itself, is ambiguous). As Professor James Willard Hurst has explained:

> Words do not have meaning in the abstract. They have meaning with reference only to some subject which those choosing the words mean to address.

J. HURST, DEALING WITH STATUTES 58 (1982).[4] Gleaning meaning of words from their context is recognized by the canon *noscitur a sociis*—the concept that a word " 'is known from its associates' " so that "ordinarily the coupling of words denotes an intention that they should be understood in the same general sense." 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.16, at 183 (5th ed. 1992); *see also Lewis Realty v. Wisconsin Real Estate Brokers' Bd.,* 6 Wis. 2d 99, 108, 94 N.W.2d 238, 243 (1959).

The word "intended" in section 941.28(1)(d), Stats., is closely associated with the words of fabrication—"designed," "redesigned," "made," and "remade." Indeed, "possession" and related concepts are dealt with in two other subsections: section 941.28(2), which, as we have seen, prohibits the possession of certain weapons, and section 941.28(4), which excludes cer-

---

[4]Thus, as Professor Hurst notes: "We cannot answer the question, what is the ordinary meaning of the word 'ring' without asking a prior question: Is the speaker talking about a signal from a telephone, an ornament to slip on a finger, an arena under a circus tent?" J. HURST, DEALING WITH STATUTES 58 (1982).

tain situations from the statute's ambit.[5] Accordingly, we conclude that the pertinent "intent" must be that of the fabricator and not that of the possessor. *See Gerdes v. State,* 319 N.W.2d 710, 712 (Minn. 1982) (statute substantially similar to section 941.28(1)(d) "only addresses the original design of the weapon").[6] Thus, a weapon is within the scope of section 941.28(1)(d) if it was either "designed" or "redesigned" and either "made" or "remade" "to be fired from the shoulder or hip" and intended by the designer or redesigner and the maker or remaker to be so operated.

Our construction of section 941.28(1)(d), Stats., which we believe is clear from the statutory language, is also consistent with the legislative intent to ban the possession of short-barreled shotguns, which are danger-

---

[5]Section 941.28(4), Stats., provides:

> This section does not apply to the sale, purchase, possession, use or transportation of a short-barreled shotgun or short-barreled rifle to or by any armed forces or national guard personnel in line of duty, any peace officer of the United States or of any political subdivision of the United States or any person who has complied with the licensing and registration requirements under 26 USC 5801 to 5872. This section does not apply to the manufacture of short-barreled shotguns or short-barreled rifles for any person or group authorized to possess these weapons. The restriction on transportation contained in this section does not apply to common carriers. This section shall not apply to any firearm that may be lawfully possessed under federal law, or any firearm that could have been lawfully registered at the time of the enactment of the national firearms act of 1968.

[6]The statute at issue in *Gerdes* defined "shotgun" to mean "a weapon designed, redesigned, made or remade which is intended to be fired from the shoulder and uses the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." 319 N.W.2d at 711 n.1.

ous and easily concealed weapons.[7] The ban would be less than efficacious if the statute's prohibition could be defeated by the possessor's professed subjective intent to not fire the weapon from his or her shoulder or hip. Indeed, under a subjective-intent standard, which we reject, a person who intended to fire the short-barreled shotgun in a stance other than "from the shoulder or hip" would escape criminal liability altogether. Thus, the fact that a short-barreled shotgun cannot be fired is not material as long as the weapon was intended by the fabricator (designer, redesigner, maker, or remaker) "to be fired from the shoulder or hip" and was designed or redesigned and made or remade to do so, provided that the weapon was also designed or redesigned and made or remade "to use the energy of a propellant in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." Since the stipulated evidence supports Johnson's conviction, we affirm.

*By the Court.*—Judgment affirmed.

[7]Thus, *Commonwealth v. Ponds,* 345 A.2d 253, 254–256 (Pa. Super. 1975), holding that a statute prohibiting possession of any "sawed-off shotgun" without defining "shotgun" encompassed such weapons whether operable or not, noted:

> The fact that a sawed-off shotgun is at a given time inoperable does not discount the danger which the legislature intended to prevent. The mere possession of an item identifiable as a sawed-off shotgun, even though inoperable is still an ominous presence, and has no place nor possible use in the community and should be prohibited.