STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael Lee WEBSTER, Defendant-Appellant.†

Court of Appeals

*No. 93–3217–CR. Submitted on briefs September 1, 1994.—Decided August 8, 1995.*

(Also reported in 538 N.W.2d 810.)

†Petition to review denied.

311

312

For the defendant-appellant the cause was submitted on the briefs of *Charles H. Barr* of *Croen & Barr*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Sharon K. Ruhly*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J. Michael Lee Webster appeals from a judgment of conviction, after a jury trial, for attempted first-degree intentional homicide and first-

degree reckless injury. Webster presents three issues for review: (1) whether the trial court lacked subject matter jurisdiction to try Webster for the first-degree reckless injury count because the State filed the amended information without leave of the trial court; (2) whether the evidence was sufficient to support the jury's finding of Webster's specific intent to kill necessary for his conviction of attempted first-degree intentional homicide; and (3) whether the trial court erroneously exercised its discretion by limiting Webster's cross-examination of the attempted homicide victim. We conclude that the trial court had subject matter jurisdiction to try Webster, that there is sufficient evidence to support the attempted homicide conviction, and that the trial court properly exercised its discretion in limiting Webster's cross-examination. Consequently, we affirm.

On September 20, 1991, Webster and the victim, Langston Hood, argued over the amount of money Hood allegedly owed Webster for assisting him with his work. After the argument, Webster left Hood's home. Minutes later, Hood and his employer were standing in front of Hood's home when Webster drove up in his van. Webster exited the vehicle brandishing a sawed-off shotgun. The gun was loaded with shotshells containing bird shot.[1] Webster walked up to Hood and Hood asked him, "What's up?" Webster then pointed the shotgun at Hood; said, "You's a dead motherfucker;" and fired the gun at him from close range. The shotgun blast struck Hood just below the left shoulder, shatter-

---

[1] Bird shot is "[a] general term used to indicate any shot smaller than buckshot." EDWARD MATUNAS, AMERICAN AMMUNITION AND BALLISTICS 212 (1979). Buckshot are "[l]ead pellets ranging in size from .20 inch to .36 inch diameter normally loaded in shotshells." Id. at 205.

ing his humerus, and tearing out most of his biceps and his chest and shoulder muscles. Hood was conveyed to the hospital. He survived the shooting.

Police arrested Webster and the Milwaukee County District Attorney's Office filed a criminal complaint charging him with one count of attempted first-degree intentional homicide. On October 4, 1991, after Webster's preliminary hearing, the State filed an information charging him solely with the attempted homicide. On that same date, the case was scheduled for a jury trial to commence on April 13, 1992.

On April 1, 1992, the State filed an amended information that added a second count charging Webster with first-degree reckless injury. The State did not obtain the trial court's permission to file the amended information. The jury trial was postponed and on June 15, 1992, Webster moved to dismiss the amended information on multiplicity grounds. The trial court denied the motion and Webster received a jury trial.

During trial, at the close of the State's case-in-chief, Webster moved the trial court to dismiss the attempted homicide charge for lack of sufficient evidence. The trial court denied the motion and the jury later convicted Webster on both counts. On the date that the trial court entered his judgment of conviction, Webster renewed his motion to dismiss the attempted homicide charge for lack of sufficient evidence. The trial court denied the motion and sentenced Webster to twenty-five years in prison: eighteen years on the attempted homicide count; and seven years on the reckless injury count, to be served consecutively to the sentence on the attempted homicide count.

■

Webster first asks us to review whether the trial court lacked subject matter jurisdiction to try him for

the first-degree reckless injury count because the State failed to obtain leave to file the amended information.[2] Consequently, he argues "the conviction for first[-]degree reckless injury . . . cannot stand." The State argues that any error arising out of its failure to obtain the trial court's permission to file the amended information does not implicate the court's subject matter jurisdiction, but instead is a procedural defect that Webster waived by failing to object timely. We agree with the State. The question of whether a trial court lacks subject matter jurisdiction is a legal issue that we review *de novo. Carlson v. Jones,* 147 Wis. 2d 630, 635, 433 N.W.2d 635, 637 (Ct. App. 1988) (questions on subject matter jurisdiction require interpretation of constitutional and statutory provisions and are thus questions of law).

"Criminal subject[ ]matter jurisdiction is the 'power of the court to inquire into the charged crime, to apply the applicable law and to declare the punishment.' " *State v. Aniton,* 183 Wis. 2d 125, 129, 515 N.W.2d 302, 303 (Ct. App. 1994) (citation omitted). A circuit court's jurisdiction over criminal matters is derived from Article VII, Section 8 of the Wisconsin Constitution[3] and § 753.03, STATS.[4] *See also State v.*

---

[2] Subject matter jurisdiction is a separate but related concept to the circuit court's competency to act—the court's " 'lesser power' to exercise subject matter jurisdiction in a particular case." *Kotecki & Radtke, S.C. v. Johnson,* 192 Wis. 2d 429, 438 n.6, 531 N.W.2d 606, 610 n.6 (Ct. App. 1995). Webster does not contest the trial court's competency to hear his trial.

[3] WIS. CONST. art. VII, § 8 (amended 1977), provides:

Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legisla-

*LeQue,* 150 Wis. 2d 256, 261-62, 442 N.W.2d 494, 497 (Ct. App. 1989). The circuit court's subject matter jurisdiction attaches upon the filing of the criminal complaint. *Aniton,* 183 Wis. 2d at 129, 515 N.W.2d at 303-04. The circuit court "lacks criminal subject[ ]matter jurisdiction only where the complaint does not charge an offense known to law." *Id.* at 129, 515 N.W.2d at 304. Further, "[o]nce criminal subject[ ]matter jurisdiction attaches, it continues until a final disposition of the case." *Id.* at 129-30, 515 N.W.2d at 304.

Webster does not allege that either the complaint, information, or amended information fails to charge an offense known to the law. Instead he argues that the State failed to obtain the trial court's permission to file the post-arraignment amended information, and that this failure deprived the trial court of subject matter jurisdiction over the amended information.

ture may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction.

[4] Section 753.03, STATS., provides:

The circuit courts have the general jurisdiction prescribed for them by article VII of the constitution and have power to issue all writs, process and commissions provided in article VII of the constitution or by the statutes, or which may be necessary to the due execution of the powers vested in them. The circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court; and they have all the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carry into effect their judgments, orders and other determinations, subject to review by the court of appeals or the supreme court as provided by law. The courts and the judges thereof have power to award all such writs, process and commissions, throughout the state, returnable in the proper county.

■

Section 971.29(1), STATS.,[5] provides: "A complaint or information may be amended at any time prior to arraignment without leave of the court." In *Whitaker v. State,* 83 Wis. 2d 368, 265 N.W.2d 575 (1978), the supreme court declared that § 971.29 "does not directly address the question of the amendment of the information after arraignment and before trial. It neither authorizes nor prohibits such amendment." *Id.* at 372, 265 N.W.2d at 578. Nevertheless, the court held: "Subsection (1) of § 971.29 should be read to permit amendment of the information before trial and within a reasonable time after arraignment, with leave of the court, provided the defendant's rights are not prejudiced, including the right to notice, speedy trial, and the opportunity to defend." *Id.* at 374, 265 N.W.2d at 579; *see Wagner v. State,* 60 Wis. 2d 722, 726, 211 N.W.2d 449, 452 (1973) ("The rule in this state is . . . that the trial court may allow amendment of an information . . . in the absence of prejudice to the defendant.").

---

[5] Section 971.29, STATS., reads:

**Amending the charge.** (1) A complaint or information may be amended at any time prior to arraignment without leave of the court.

(2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

(3) Upon allowing an amendment to the complaint or indictment or information, the court may direct other amendments thereby rendered necessary and may proceed with or postpone the trial.

The failure of the State to obtain the permission of the trial court to file a post-arraignment amended information does not deprive the trial court of subject matter jurisdiction because, once subject matter attaches with the filing of the criminal complaint, it continues until the final disposition of the case. *Aniton,* 183 Wis. 2d at 129-30, 515 N.W.2d at 304. Accordingly, while the failure to obtain the trial court's permission to file an amended information is a procedural defect, this failure neither implicates a lack of subject matter jurisdiction, nor is it reversible error without a showing of prejudice on the part of the defendant. *See Whitaker,* 83 Wis. 2d at 374, 265 N.W.2d at 579; *Wagner,* 60 Wis. 2d at 276, 211 N.W.2d at 452.

Further, alleged trial court errors resulting from non-jurisdictional procedural defects are waived by a defendant if not properly preserved with a timely and specific objection. *See, e.g., State v. Washington,* 142 Wis. 2d 630, 635-36, 419 N.W.2d 275, 277 (Ct. App. 1987) (discussing waiver). In the present case, Webster never objected to the State's filing of the amended information without leave of the trial court. He objected only on multiplicity grounds. Accordingly, Webster waived the procedural-defect issue and we decline to exercise our power of discretionary review. *See* § 752.35, STATS. (If it appears from the record "that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried," the court of appeals may reverse the judgment or order.).

Webster next argues the evidence was insufficient to support the jury's finding of his specific intent to

commit attempted first-degree intentional homicide when he shot Hood with the sawed-off shotgun. The standard of review that we apply when testing the sufficiency of the evidence is recited in *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990):

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.* at 507, 451 N.W.2d at 757-758 (citations omitted). Stated another way: "[t]his court will only substitute its judgment for that of the trier of fact when the fact finder relied upon evidence that was inherently or patently incredible—that kind of evidence which conflicts with the law of nature or with fully-established or conceded facts." *State v. Tarantino*, 157 Wis. 2d 199, 218, 458 N.W.2d 582, 590 (Ct. App. 1990). Additionally, the trier of fact is the sole arbiter of the credibility of witnesses and alone is charged with the duty of weighing the evidence. *See Poellinger*, 153 Wis. 2d at 506, 451 N.W.2d at 756.

■

"There are two elements to the 'attempt' to commit a crime; 'a criminal intent and some acts in furtherance of the intent.' " *State v. Kordas*, 191 Wis. 2d 124, 129, 528 N.W.2d 483, 485 (Ct. App. 1995) (citation omitted).

This court previously discussed the "symbiotic" relationship between attempted first-degree intentional homicide and "completed" first-degree intentional homicide:

> The law of attempted first-degree [intentional homicide] is not conceptually different from that of completed first-degree [intentional homicide]. Both require an intent on the part of the defendant to take the life of another. In order to prove the crime of attempted first-degree [intentional homicide], the state must establish that the defendant's action would have caused the death of another except for the intervention of some extraneous factor.

*State v. Camacho*, 170 Wis. 2d 53, 66 n.7, 487 N.W.2d 67, 73 n.7 (Ct. App. 1992), *rev'd on other grounds*, 176 Wis. 2d 860, 501 N.W.2d 380 (1993). To prove the *mens rea* element of attempted first-degree homicide, the State must establish that the defendant "acted with the intent to kill," that is, "the defendant had the mental purpose to take the life of another human being or was aware that his conduct was practically certain to cause the death of another human being." *See* WIS J I—CRIMINAL 1010; *see also* § 939.23, STATS. (defining criminal intent). This "[i]ntent may be inferred from the defendant's conduct, including his words and gestures taken in the context of the circumstances." *State v. Stewart*, 143 Wis. 2d 28, 35, 420 N.W.2d 44, 47 (1988). "The acts of the accused, however, 'must not be so few or of such an equivocal nature as to render doubtful the existence of the requisite criminal intent.' " *Id.* at 35-36, 420 N.W.2d at 47 (citation omitted). Further, " '[s]ince all attempts to commit crimes are failures to do so, a failure excuses a defendant who attempts a crime only when his actual attempt is

incomplete, rather than unsuccessful.' " *State v. Dix,* 86
Wis. 2d 474, 483, 273 N.W.2d 250, 255 (1979) (citation
omitted).

Webster argues that he precisely aimed the shot-
gun at Hood's armpit, and that the gun was loaded only
with shotshells filled with bird shot. Thus, he argues
that his actions did not evince the necessary "intent to
kill" required to convict him of attempted first-degree
homicide. Accordingly, he states in his reply brief, that
the evidence is insufficient to support his conviction
because it:

> clearly established that Mr. Webster walked unim-
> peded to a point directly in front of Langston Hood,
> raised the shotgun and shot him from point blank
> range; that nothing and nobody interfered with Mr.
> Webster; and that the only thing Mr. Hood did was
> to raise his arms. *If it is clear that Mr. Webster
> intended to kill Mr. Hood, why was the attempt
> unsuccessful.*

Webster's argument is specious. The jury could clearly
determine that Webster intended to kill Hood when he
fired a sawed-off shotgun at Hood's upper torso from
close range. *See Fells v. State,* 65 Wis. 2d 525, 534, 223
N.W.2d 507, 512 (1974) (" 'When one intentionally
points a loaded gun at the vital part of the body of
another and discharges it, it cannot be said that [that
person] did not intend the natural, usual, and ordinary
consequences.' " (citation omitted)).

We reach this conclusion because it is a fundamen-
tal presumption in Wisconsin criminal law "that a
person intends the natural and probable consequences
of those acts he voluntarily and knowingly performs."
*Dix,* 86 Wis. 2d at 482-83, 273 N.W.2d at 254. This

presumption is applicable to attempted first-degree intentional homicide cases, as well as "completed" homicide cases. *Id.* Further, it is irrelevant on the issue of his guilt that his actions were "unsuccessful" (i.e., that he did not kill Hood), because he completed the act of firing a sawed-off shotgun at another person from close range. *Id.* at 483, 273 N.W.2d at 254.

Thus, because Webster fired the sawed-off shotgun into Hood's upper torso, "that fact alone establishes intent to kill, in the absence of evidence rebutting this presumption." *Fells,* 65 Wis. 2d at 534, 223 N.W.2d at 512. This presumption is not the only evidence supporting the jury's finding. There was evidence that just prior to pulling the shotgun's trigger, Webster said, "You's a dead motherfucker" to Hood. Webster's "words and gestures" further buttress the presumption that Webster intended to kill Hood. *See Stewart,* 143 Wis. 2d at 35, 420 N.W.2d at 47.

Nonetheless, Webster raises essentially two strands of evidence that he argues rebuts the presumption of his intent: (1) that he was only aiming at Hood's shoulder and armpit area, and that this is not a "vital part of the body;" and (2) that the shotgun was loaded only with shotshells containing bird shot, which, he argues, "is one of the least likely types of ammunition to be employed for killing another human being." We are not persuaded.

First, the evidence is not clear that Webster aimed the shotgun only at Hood's armpit area. Hood testified that he raised his arms when he saw the gun and that the shotgun was aimed directly at the left side of his chest when Webster pulled the trigger. Such testimony is not patently incredible and the jury could conclude

that Webster did not aim the gun at Hood's armpit, but rather at Hood's chest. *See Poellinger,* 153 Wis. 2d at 506, 451 N.W.2d at 756 (only jury can weigh evidence).

Further, a reasonable jury could conclude that a defendant who aims a sawed-off shotgun from close range at a person's upper torso and then pulls the trigger evinces an intent to kill that person. A *sawed-off* shotgun fired at close range is *sui generis*.[6] Used in such a manner, a shotgun is not a "precision" weapon such as a handgun or long rifle. Indeed, the evidence showed that the bird shot propelled from Webster's shotgun both shattered Hood's humerus and shredded his biceps and his chest and shoulder muscles. From this evidence the jury could reasonably conclude that Webster intended to kill Hood.

Further, the fact that the shotgun was loaded with shotshells filled with bird shot does not necessarily rebut the presumption that Webster intended to kill Hood. While we acknowledge that bird shot when fired from long range may not be particularly lethal when compared to other types of ammunition, Webster did not fire the shotgun at Hood from long range—he fired

---

[6] In support of the notion that a sawed-off shotgun is "of its own kind or class," we note our statement in a previous case that "[t]he mere possession of an item identifiable as a sawed-off shotgun . . . is . . . an ominous presence, and has no place nor possible use in the community." *State v. Johnson,* 171 Wis. 2d 175, 183 n.7, 491 N.W.2d 110, 113 n.7 (Ct. App. 1992).

Further, other jurisdictions recognize the uniqueness of a sawed-off shotgun. *Cf. State v. Sullivan,* 596 So.2d 177, 189-90 (La. 1992) ("The deliberate pointing and firing of a [sawed-off] shotgun at a victim at point-blank range is sufficient to establish beyond a reasonable doubt the element of specific intent to kill."); *Smith v. State,* 398 A.2d 426, 430 (Md. Ct. Spec. App. 1979) (concluding that a defendant firing a sawed-off shotgun from point-blank range at victim shows intent to kill).

it at close range. A jury could clearly and reasonably conclude that a person who fires bird shot at another person's upper torso *from close range* intends to kill that person. *See State v. Gallo,* 582 P.2d 558, 565 (Wash Ct. App. 1978) (stating gun loaded with bird shot "could be" lethal). *But cf. Blount v. State,* 376 S.W.2d 844, 848 (Tex. Crim. App. 1964) (discussing how firing a shotgun loaded with "No. 8 bird shot" at victim "too far off" may not show intent to kill, although gun could still be deadly weapon) (citation omitted), *overruled on other grounds by, Boazman v. State,* 501 S.W.2d 894 (Tex. Crim. App. 1973); *Smith v. State,* 102 So. 2d 699, 700-01 (Miss. 1958) (holding that evidence of defendant firing shotgun filled with No. 8 bird shot from a distance of sixty feet is not sufficient to show defendant had intent to kill). In sum, there is sufficient evidence to support the jury's finding that Webster evinced the necessary intent to kill Hood. *See Poellinger,* 153 Wis. 2d at 507, 451 N.W.2d at 757-58.

Finally, Webster argues that the trial court erroneously exercised its discretion by limiting his cross-examination of the victim. During Webster's cross-examination of Hood, he attempted to inquire about whether Hood complied with state and federal income tax, minimum wage, and social security laws. Webster argued that because Hood considered Webster his employee, Hood was required to comply with these laws, and that any testimony on his failure to do so was relevant to Hood's credibility. The trial court ruled that such testimony was inadmissible because it was irrelevant, lacked probative value, and would mislead the jury. We agree with the trial court.

"A trial court possesses wide discretion in determining whether to admit or exclude evidence, and we

will reverse such determinations only upon an erroneous exercise of that discretion." *State v. Evans,* 187 Wis. 2d 66, 77, 522 N.W.2d 554, 557 (Ct. App. 1994). "The trial court properly exercises its discretion if its determination is made according to accepted legal standards and if it is in accordance with the facts on the record." *Id.*

Any testimony on Hood's compliance with employment law was collateral to any fact at issue in Webster's attempted first-degree intentional homicide trial. While Webster argues Hood's compliance with such laws was relevant to Hood's credibility, the possible probative value of such testimony on this issue was both *de minimis* and could mislead the jury. As such, the trial court could properly exclude it. *See* RULE 904.03, STATS.[7]

*By the Court.*—Judgment affirmed.

---

[7] RULE 904.03, STATS. provides:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.