STATE of Wisconsin, Plaintiff-Respondent,†

v.

Linda M. HENTHORN, Defendant-Appellant.

Court of Appeals

*No. 97–2235–CR. Submitted on briefs January 22, 1998.—Decided April 2, 1998.*

(Also reported in 581 N.W.2d 544.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael Yovovich*, assistant state public defender, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

EICH, C.J. Linda Henthorn appeals from a judgment convicting her of attempted fraudulent

acquisition of a controlled substance. Section 961.43(1)(a), STATS., prohibits persons from "acquir[ing] or obtain[ing] possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." A jury found Henthorn guilty after hearing testimony that she presented an altered prescription form to a pharmacist. She argues on appeal that the evidence is insufficient to sustain the conviction. We agree and reverse the judgment. Viewing the evidence in the light most favorable to the State and the jury's verdict, we hold that Henthorn's conduct could not, as a matter of law, constitute an attempt to fraudulently acquire a controlled substance.

Henthorn's physician wrote her a prescription for thirty Tylenol 3 pills—which contain codeine, a controlled substance—and one refill. When Henthorn took the prescription to a Viroqua pharmacy that had been filling her prescriptions—including prescriptions for Tylenol 3—for several years, the pharmacist noticed that the number "11" appeared in the space provided for the number of refills. Aware that a prescription for drugs containing codeine can legally be refilled only five times in a six-month period, he contacted Henthorn's doctor, learned that the prescription had been written to provide for only "1" refill, filled the order, and telephoned the police. Henthorn admitted that she had the prescription in her sole possession after receiving it in the doctor's office, but she denied altering it, stating: "I did not do it. I'm not going to lose my RN license over that."

When the sufficiency of the evidence is challenged on appeal, we will sustain the conviction if, considering the evidence in the light most favorable to the prosecution, we can conclude that "a rational trier of fact could

find . . . that the [S]tate proved the essential elements of the crime beyond a reasonable doubt." *State v. Stewart,* 143 Wis. 2d 28, 31, 420 N.W.2d 44, 45 (1988).

■

In *Hamiel v. State,* 92 Wis. 2d 656, 666, 285 N.W.2d 639, 646 (1979), the supreme court outlined the two requirements for proof of an attempted crime:

> [I]t must . . . be shown that: (1) the defendant's actions in furtherance of the crime clearly demonstrate, under the circumstances that he [or she] had the requisite intent to commit the crime . . . ; and (2) that having formed such intent the defendant had taken sufficient steps in furtherance of the crime so that it was improbable that he [or she] would have voluntarily terminated his [or her] participation in the commission of the crime.[1]

The court instructed the jury that, to convict, the State must prove beyond a reasonable doubt that Henthorn intended to commit the offense of fraudulent acquisition of a controlled substance and that she did acts demonstrating unequivocally that she intended to commit and would have committed that offense but for the intervention of another person or some other extraneous factor. The court went on to discuss the underlying offense:

---

[1] These requirements are embodied in § 939.32(3), STATS., which provides:

> An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

The crime of fraudulent acquisition of a controlled substance is committed by one who acquires possession of codeine by misrepresentation. . . .

. . . .

. . . with the intent to deceive another and with intent to induce that person to rely and act thereon.

This . . . requires that the defendant intended to deceive the pharmacist on duty . . . and intended to induce him to rely and act on the misrepresentation.

[The offense of fraudulent acquisition of codeine also] requires that the pharmacist was deceived by the misrepresentation. This requires that the pharmacist must have been induced to and did in fact part with possession of the codeine in reliance upon the misrepresentation.

With respect to the "attempt," the court instructed the jury that the State must prove that Henthorn

did acts toward the commission of the crime of fraudulent acquisition of a controlled substance which demonstrate unequivocally, under all of the circumstances, that she intended to and would have committed the crime . . . . except for the intervention of another person or some other extraneous factor.[2]

"Unequivocally" means that no other inference or conclusion can reasonably and fairly be drawn from the defendant's acts, under the circumstances.

---

[2] The State is not required to prove that the intervention of another person or an extraneous factor actually interrupted the defendant's acts. *State v. Stewart*, 143 Wis. 2d 28, 41, 420 N.W.2d 44, 49 (1988). The purpose of the "intervention" language in § 939.32(3), STATS., is simply "to denote that the actor must have gone far enough toward completion of the crime to make it improbable that he [or she] would change his [or her] mind and desist." *Id.* at 41–42, 420 N.W.2d at 49.

Viewing the facts most favorable to the prosecution requires us to assume that, despite her denial, Henthorn in fact altered the prescription, changing the refill number from "1" to "11." She then presented the prescription to the pharmacist but took no further action. The State concedes that Henthorn's alteration of the prescription, considered alone, was "so equivocal as to cast doubt on whether she had yet formed the criminal intent necessary to be guilty of attempt." We agree, for the completed offense is "acquir[ing] . . . a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." Section 961.43(1)(a), STATS. Altering a prescription, without more, is not a crime. Instead, the State concentrates its argument on the fact that, even though Henthorn had a valid prescription entitling her to purchase, or "acquire," the Tylenol 3, her act of presenting the order to the pharmacist demonstrates "unequivocally" that she fraudulently intended to acquire codeine for which she had no valid prescription—that, in the words of the jury instruction, she intended to "obtain[ ] possession of the [codeine] by misrepresentation made with the intent to deceive [the pharmacist] and with intent to induce . . . [him] to rely and act thereon" by giving her the codeine "in reliance upon the misrepresentation." "Why else," says the State, "would she go to the trouble of altering the prescription and presenting [it] . . . to the pharmacist the first time?"

While a person's intent may be inferred from his or her conduct "taken in the context of the circumstances," *Stewart*, 143 Wis. 2d at 35, 420 N.W.2d at 47, and we will presume that a person intends the natural and probable consequences of his or her voluntary and knowing acts, *State v. Webster*, 196 Wis. 2d 308, 322,

538 N.W.2d 810, 815 (Ct. App. 1995), those acts "must not be so few or of such an equivocal nature as to render doubtful the existence of the requisite criminal intent." *Berry v. State*, 90 Wis. 2d 316, 327, 280 N.W.2d 204, 209 (1979). Under § 939.32(3), STATS., one attempts to commit a crime only when it has become too late to "repent[ ] and withdraw[ ]" from the criminal act. *Berry*, 90 Wis. 2d at 327, 280 N.W.2d at 209.

> The conduct element of sec. 939.32(3) is satisfied when the accused engages in conduct which demonstrates that only a circumstance beyond the accused's control would prevent the crime, whether or not such a circumstance actually occurs. An attempt occurs when the accused's acts move beyond the incubation period for the crime, that is, the time during which the accused has formed an intent to commit the crime but has not committed enough acts and may still change his [or her] mind and desist. In other words the statute requires a judgment in each case that the accused has committed sufficient acts that it is unlikely that he [or she] would have voluntarily desisted from commission of the crime.

*Stewart*, 143 Wis. 2d at 42, 420 N.W.2d at 49–50 (footnote omitted).

As a matter of law, Henthorn's conduct in this case was insufficient to show that she would "probably not desist from the criminal course." *Id.* at 41, 420 N.W.2d at 49. When she presented the prescription to the pharmacist she was, as we have noted, obtaining medicine that she was legally entitled to receive; Henthorn was seeking only the first of the two vials of Tylenol 3 her physician had prescribed. She would have to return to the pharmacy, and one more time after that, in order to "acquire or obtain possession of a controlled substance

by misrepresentation, fraud, forgery, deception or subterfuge" in violation of § 961.43(1)(a), STATS.

In *Hamiel*, the supreme court suggested that the likelihood that a defendant's actions unequivocally demonstrate an intent to commit the underlying crime can best be assessed through the eyes of a cinematographer:

> as though a . . . film, which has so far depicted merely the accused person's acts without stating what was his [or her] intention, had been suddenly stopped, and the audience were asked to say to what end those acts were directed. If there is only one reasonable answer to this question then the accused has done what amounts to an "attempt" to attain that end. If there is more than one reasonably possible answer, then the accused has not yet done enough.

*Hamiel*, 92 Wis. 2d at 665 n.4, 285 N.W.2d at 645 (quoting J.W.C. Turner, *Attempts to Commit Crimes*, 5 CAMBRIDGE L.J. 120, 237–38 (1934)).

In this case, if we were to stop the film at the point where Henthorn presented the altered prescription to the pharmacist to obtain the first of two vials of Tylenol 3 that had properly been prescribed for her, it is possible that she might return once, and then once again to obtain the refill to which she was not entitled. We cannot say, however, that is the only "reasonably possible answer." *Hamiel*, 92 Wis. 2d at 665 n.4, 285 N.W.2d at 645. It is also reasonably possible that she might, in the intervening time, decide not to commit an offense which, as she told a police officer, she knew would result in the loss of her nursing license.

Under the instructions given to them, the jurors would have to find that Henthorn's actions up to and on the day in question demonstrated unequivocally—that is, that "no other inference or conclusion can reasonably and fairly be drawn from . . . [her] acts"—that she intended to fraudulently acquire codeine. Stated another way, the State had to present evidence sufficient to establish beyond a reasonable doubt that " 'under all the circumstances it was too late for . . . [Henthorn] to have repented and withdrawn' " from the ultimate criminal act. *Stewart*, 143 Wis. 2d at 40, 420 N.W.2d at 49 (quoting *Berry*, 90 Wis. 2d at 327, 280 N.W.2d at 209).[3]

---

[3] In *Stewart*, the defendant, who was charged with attempted robbery, had, along with two companions, cornered the victim in a bus shelter, repeatedly and loudly demanded money from him, and was in the process of drawing a firearm from his coat pocket when one of his companions told him to "put that gun away." *Stewart*, 143 Wis. 2d at 32, 420 N.W.2d at 45–46.

Other cases similarly suggest that more culpable conduct than that exhibited by Henthorn in this case is necessary to find the "unequivocal" acts necessary to support a conviction for attempt. *See, e.g., State v. Thiel,* 183 Wis. 2d 505, 541, 515 N.W.2d 847, 861 (1994) (defendant charged with attempting to exhibit harmful material to a child showed the child a book containing pictures of men and women engaged in sexual intercourse, orally offered to show the child "dirty movies" and possessed a large number of sex toys and pornographic videos); *Hamiel v. State,* 92 Wis. 2d 656, 659, 285 N.W.2d 639, 642 (1979) (defendant charged with attempted robbery entered a store, claimed he had a gun, threatened to shoot and ordered the clerk to "bag the money" at the cash register); *Berry v. State,* 90 Wis. 2d 316, 320, 280 N.W.2d 204, 206 (1979) (defendant charged with attempted theft entered a store, stuffed merchan-

We conclude that, as a matter of law, no reasonable jury could find on this record that the State had proved the essential elements of the offense of attempted fraudulent acquisition of a controlled substance. We therefore reverse Henthorn's conviction.

*By the Court.*—Judgment reversed.

DYKMAN, P.J. *(dissenting)*. If we are to use the "moving picture" test noted in *Hamiel v. State*, 92 Wis. 2d 656, 665 n.4, 285 N.W.2d 639, 645 (1979), the camera stopped when Henthorn obtained the first bottle of codeine and left the pharmacy. *Hamiel* notes that "[t]he key inquiry is a determination of whether, under all the facts and circumstances, the accused was likely to voluntarily cease and desist from completion of the criminal act." *Id.* at 667, 285 N.W.2d at 646. In my view, the word "likely" is the important part of the test. The word "likely" is the equivalent of "probably." *See Pucci v. Rausch*, 51 Wis. 2d 513, 519, 187 N.W.2d 138, 142 (1971). "Probably" and "likely" are not words of certainty. The word "probably" defines a common sense view of cause and effect. It focuses on what usually happens in the affairs of people. Had Henthorn been apprehended with the forged prescription immediately after she forged it, this would be a closer case. But I believe that Henthorn crossed the Rubicon when she presented the forged prescription to the pharmacist.

dise partially into his pants, denied that he had done so to a store employee, resisted the employee's efforts to recover the merchandise, and walked away very quickly); *State v. Webster,* 196 Wis. 2d 308, 323, 538 N.W.2d 810, 816 (Ct. App. 1995) (defendant charged with attempted intentional homicide shot victim in the upper torso at close range, yelling "You's a dead motherfucker").

That is the difficult part of committing the crime of acquiring possession of a controlled substance by forgery. Purchasing the third bottle is the easy part. The reason codeine is regulated is the danger of misuse and addiction. Persons who desire excessive amounts of controlled substances are known to commit crimes to obtain them. I conclude that after Henthorn obtained the first bottle of codeine, a reasonable jury could conclude that she was unlikely to cease and desist from getting the second and then the third bottle of the substance. I would affirm Henthorn's conviction, and therefore I respectfully dissent from the majority opinion.