State of Wisconsin, Plaintiff-Respondent,
v.
Cesar Flores-Ramirez, Defendant-Appellant.
No. 03-3479-CR.
Court of Appeals of Wisconsin.
Opinion Filed: November 2, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Cesar Flores-Ramirez appeals a judgment, entered upon a jury's verdict, convicting him of first-degree intentional homicide, as party to a crime. Flores-Ramirez argues that the evidence at trial was insufficient to support his conviction. We reject his arguments and affirm the judgment.

BACKGROUND
¶2 An Information charged Flores-Ramirez with first-degree intentional homicide, as party to a crime, arising from the beating death of Hector Hugo Martinez-Razo. After a trial, the jury returned a verdict finding Flores-Ramirez guilty of the crime charged. Flores-Ramirez was convicted upon the jury's verdict and this appeal follows.

DISCUSSION
¶3 Flores-Ramirez argues that the evidence at trial was insufficient to support his conviction for first-degree intentional homicide, as party to a crime. Whether the evidence supporting a conviction is direct or circumstantial, we utilize the same standard of review regarding its sufficiency. State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). We must uphold Flores-Ramirez's conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." Id. If there is a possibility that the jury "could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," we must uphold the verdict. Id. at 507. It is the jury's function to decide the credibility of witnesses and reconcile any inconsistencies in the testimony. State v. Toy, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). Thus, if more than one inference can be drawn from the evidence, this court must accept the inference that supports the jury's finding "unless the evidence on which that inference is based is incredible as a matter of law." Poellinger, 153 Wis. 2d at 506-07.
¶4 Here, Flores-Ramirez was tried under the party to a crime statute, WIS. STAT. § 939.05. A defendant is liable under the party to a crime theory if he or she aids and abets the commission of the crime. An aider and abettor is someone who knows or believes that another person is committing, or intends to commit, a crime and knowingly either renders aid to that person or stands by, ready and willing to render aid if needed, and the person who directly commits the crime knows of his or her willingness to help. See State v. Sharlow, 110 Wis. 2d 226, 238-39, 327 N.W.2d 692 (1983). As a matter of law, one who intentionally aids and abets the commission of a crime is responsible for the intended crime and any other crime that is committed as a natural and probable consequence of the criminal act. State v. Ivy, 119 Wis. 2d 591, 598, 350 N.W.2d 622 (1984).
¶5 At trial, Mark Steinfeldt testified that at 2:30 a.m. on October 7, 2002, Flores-Ramirez and Sergio Hernandez came to his house seeking assistance in getting a car out of the ditch. Unnerved by the intrusion, Steinfeldt's wife called 911. As police officers arrived at the residence, Flores-Ramirez fled and Hernandez remained on the porch. When the officers later discovered Flores-Ramirez hiding in a field, they observed what appeared to be blood spatter on his hat, face, shirt, hands, right pant leg and boot.
¶6 As additional officers were dispatched to the Steinfeldt residence, one noticed a Ford Mustang in the ditch. Upon inspection, officers observed blood on both the exterior and interior of the car, as well as a large pool of blood in the middle of the roadway. Martinez-Razo's body was discovered in the ditch approximately four-tenths of a mile from the car. Because there was a blood trail leading from the road to the ditch and Martinez-Razo's pants were slightly down, officers opined that he was dragged to the ditch after collapsing on the roadway. Officers also discovered a bloody baseball bat near the scene.
¶7 A forensic scientist testified that the blood stains on Flores-Ramirez's face and the baseball bat were consistent with Martinez-Razo's blood. Likewise, a forensic pathologist testified that Martinez-Razo died from multiple blunt force injuries to his head, consistent with repeated blows from a baseball bat.
¶8 The jury heard testimony that Flores-Ramirez gave three different accounts of the events leading to Martinez-Razo's death. In his initial account, Flores-Ramirez told police that Martinez-Razo died after being thrown out of the passenger-side window as part of a traffic accident. In a follow-up interview with authorities, Flores-Ramirez indicated that he hit Martinez-Razo with his fist and feet, leaving him unconscious in the roadway. Finally, at trial, Flores-Ramirez testified that it was Hernandez who repeatedly hit Martinez-Razo with a baseball bat and warned Flores-Ramirez not to tell anybody about the incident. Flores-Ramirez further testified that he threw the bat into the field to prevent Hernandez from using it again. Finally, Flores-Ramirez testified that he ran when the police arrived at the Steinfeldt residence because he was scared.
¶9 Flores-Ramirez claims there was insufficient evidence to prove that he caused Martinez-Razo's death or otherwise intended to kill him. The elements of first-degree intentional homicide are that the defendant: (1) caused the death of the victim; and (2) acted with the intent to kill the victim. WIS. STAT. § 940.01(1)(a); WIS JICRIMINAL 1010. Because Flores-Ramirez was tried under the party to a crime statute, the State did not need to prove his specific intent to kill. See State v. Zelenka, 130 Wis. 2d 34, 47, 387 N.W.2d 55 (1986) ("In Wisconsin, there is no requirement that an aider and abettor share the specific intent required for commission of the substantive offense he aids and abets."). Regardless whether it was Flores-Ramirez or Hernandez who wielded the bat against Martinez-Razo, the actor's intent to kill may be inferred from the fact that Martinez-Razo received at least five blows to his head. See State v. Webster, 196 Wis. 2d 308, 321, 538 N.W.2d 810 (Ct. App. 1995) (intent may be inferred from a defendant's conduct.).
¶10 Although Flores-Ramirez testified that he was an innocent observer to Hernandez's murder of Martinez-Razo, it is the jury's function to decide the credibility of witnesses and reconcile any inconsistencies in the testimony. Toy, 125 Wis. 2d at 222. Moreover, the evidence and Flores-Ramirez's actions are consistent with the allegation that he was a willing participant in the murder. Flores-Ramirez was covered with the victim's blood and stayed with Hernandez after the killing, joining him at the Steinfeldt residence to request assistance with the car. Based on the officers' opinion that the 242-pound Martinez-Razo had been dragged into the field from the road, the jury could infer that two men would be necessary to accomplish the feat. Finally, Flores-Ramirez fled from the police rather than seeking their assistance and gave conflicting versions of what occurred. In one account, Flores-Ramirez admitted physically assaulting Martinez-Razo. Because we conclude that the jury heard sufficient evidence to support Flores-Ramirez's conviction, we affirm the judgment.
By the Court.  Judgment affirmed.