STATE of Wisconsin, Plaintiff-Respondent,

v.

Gabriel DERANGO, Defendant-Appellant.†

Court of Appeals

*No. 98–0642–CR. Submitted on briefs February 23, 1999.—Decided June 23, 1999.*

(Also reported in 599 N.W.2d 27.)

†Petition to review granted.

1

2

4

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert G. LeBell* of *Styler, Kostich, LeBell, Dobroski & McGuire* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J. On February 9, 1997, Gabriel DeRango telephoned fifteen-year-old Jessica E. and asked her to perform a striptease and sex acts for the purpose of making a pornographic videotape. Jessica refused. DeRango was later apprehended and found to be in possession of various "homemade" videotapes depicting young women performing stripteases and various sex acts. He was then convicted of child enticement and attempted child exploitation in violation of §§ 948.07, 948.05 and 939.32, STATS.[1] He now contends that his conviction was in error because (1) the charges of child enticement and attempted child exploitation were multiplicitous, (2) the presentation of his homemade videotapes to the jury was inadmissible other acts evidence, (3) the evidence was otherwise insuffi-

---

[1] DeRango appeals from this judgment and from orders denying his motions to dismiss on grounds of multiplicity and insufficiency of the preliminary examination.

5

cient to sustain the conviction, (4) the State improperly amended the information at the close of evidence, and (5) he was denied a unanimous jury verdict as to the child enticement count. We reject DeRango's arguments, and affirm the trial court's decision.

## BACKGROUND

On February 7, 1997, Jessica visited a McDonald's restaurant in Kenosha with some friends. While waiting outside, she was approached by DeRango, who was employed at the restaurant. He asked her what grade she was in and she responded that she was in the tenth grade. DeRango went back inside the restaurant but later returned to ask her whether she had ever modeled. She replied that she had and that she was currently in modeling school. He inquired whether she was interested in modeling for some magazines and catalogs. Jessica said "yes," and he then asked for her phone number, explaining that he needed to talk to her mother because she was underage. Jessica gave him her home phone number and he said he would call her soon.

Two days later, DeRango telephoned Jessica at home and asked her if she was still interested in modeling. When she asked what type of modeling was involved, he responded that the job was "risque." Then, as Jessica later testified:

> He told me that he would give me $300 if I did it. He then asked me if I had a boyfriend. I told him yes. He then asked . . . if me and my boyfriend had ever fucked. I told him that it was none of his business. He asked me if I ever tried oral sex. I told him that it was none of his business. He told me that I should try to have sex with an older man. He was hinting that I should [do] it with him. He was very persis-

tent in offering me $300 in exchange for him filming me doing sex acts. He told me he wanted me to strip tease. I would then engage in nude sex acts with either him or his friends while I was being video-taped. He would not take no for an answer. He told me to think about it, and he would call [tomorrow] to talk more about it.

The next morning Jessica went to the police and provided a statement to City of Kenosha Police Detective Russell Beckman.

On February 15, 1997, Beckman interviewed DeRango at his residence. After inquiring about DeRango's contact with Jessica, Beckman asked if he could take some videotapes he found in DeRango's living room. DeRango consented. When Beckman later viewed the tapes, he found them to be amateur productions depicting women, some of whom appeared to be in their middle to late teens, performing stripteases and sex acts.

A few days later, Beckman took a statement from DeRango at his home. DeRango indicated that on February 7, 1997, he was working at McDonald's when a young girl approached him and started talking. She told him that she was taking a modeling class and wanted to be a model. DeRango stated that he was surprised. She then gave him her phone number. He stated that she was between fifteen and seventeen years old. On Sunday, he called her and they talked about school. According to DeRango, Jessica said she was having trouble at school and with her boyfriend, that she was pregnant, that she needed money and that she would have sex with DeRango for fifty dollars. DeRango stated that he did not respond after that and then ended the call.

DeRango was subsequently charged with one count of child exploitation for the purpose of videotaping sexually explicit conduct contrary to § 948.05(1)(a), STATS. After the preliminary examination, the State filed an information restating the child exploitation charge and adding a count of child enticement pursuant to § 948.07(1), STATS., charging DeRango with having an "intent to have sexual contact" with a child in a secluded place in violation of § 948.02(2), STATS.

DeRango pled not guilty to both charges. He then brought motions to dismiss claiming that the counts were multiplicitous and that the evidence presented at the preliminary examination did not support a probable cause finding that he had committed a felony. The court denied his motions. DeRango subsequently petitioned this court for leave to appeal the trial court's nonfinal order denying his motion to dismiss on grounds that the charges were multiplicitous. We denied his petition on July 7, 1997.

On July 17, 1997, a jury trial was commenced. At the close of evidence, the State amended its information to state the following charges: (1) attempted child exploitation contrary to §§ 939.32(1) and 948.05(1)(a), STATS.; and (2) child enticement with an attempt to cause Jessica to go into a secluded place and with the intent to have sexual contact with her, to expose a sexual organ to her, to cause her to expose a sexual organ, or to take pictures or audio recordings of her engaging in sexually explicit conduct contrary to § 948.07(1), (3) and (4), STATS. The jury found DeRango guilty on both counts, and he was then placed on four years of probation. DeRango appeals.

## DISCUSSION

### A. Errors at the Preliminary Hearing

DeRango initially contends that the evidence presented at the preliminary examination was insufficient to support the court's finding that probable cause existed that he had committed a felony. He asserted this position in a March 31, 1997 motion to dismiss and before the court during a motion hearing held on May 2, 1997. The court denied DeRango's motion. He resumes this argument on appeal.

Our review of a trial court's bindover decision is de novo. *See State v. Moats*, 156 Wis. 2d 74, 84, 457 N.W.2d 299, 304 (1990). The State contends that pursuant to *State v. Webb*, 160 Wis. 2d 622, 467 N.W.2d 108 (1991), DeRango waived any claim of error because he did not petition the court of appeals for permission to appeal the nonfinal probable cause order. In *Webb*, our supreme court held that

> a conviction resulting from a fair and errorless trial in effect cures any error at the preliminary hearing. Accordingly, a defendant who claims error occurred at his preliminary hearing may only obtain relief before trial. Thus, no relief is available to the defendant in the case at bar.

*Id.* at 628, 467 N.W.2d at 110.

Unlike the defendant in *Webb*, DeRango did seek relief before trial by petitioning for leave to appeal from the trial court's June 16, 1997 order denying his motion to dismiss. The issue raised in that motion, however, did not involve the sufficiency of the preliminary examination; rather, it concerned whether the charges

against him were multiplicitous in violation of the constitutional prohibition against double jeopardy and the guarantee of due process. This court denied his petition on July 7, 1997. Because DeRango now appeals on a different ground than that which was originally raised, his argument is waived.

## B. Multiplicitous Charges

DeRango contends that the only conduct with which he has been charged was a telephone conversation with Jessica on February 9, 1997. He argues that being tried for violating two separate criminal statutes where only one act exists is multiplicitous, in violation of his rights to due process and the prohibition against double jeopardy under the Fifth Amendment and Article I, Section 8 of the Wisconsin Constitution. *See State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809, 815 (1980). We are not persuaded.

The test for multiplicity first asks whether the charged offenses are identical in both law and fact. *See State v. Grayson*, 172 Wis. 2d 156, 159, 493 N.W.2d 23, 25 (1992). If they are identical, the charges are considered multiplicitous; if they are not, then we consider whether the legislature intended the charges to be brought as a single count. *See id.* Where the first test for multiplicity is not met, "then this court shall presume that the legislature intended to permit cumulative punishments." *Id.* at 160, 493 N.W.2d at 25 (quoted source omitted). This presumption may be overcome "only by 'a clear indication of legislative intent to the contrary.' " *State v. Johnson*, 178 Wis. 2d 42, 50, 503 N.W.2d 575, 577 (Ct. App. 1993) (quoted source omitted).

Here, DeRango concedes that the counts are not identical in law. Therefore, the first test for multiplic-

ity is not met. As to our second inquiry, we are "limited to determining whether the legislature's intent contravenes the presumption that multiple felony convictions are permissible under sec. 948.22(2), STATS." *Grayson*, 172 Wis. 2d at 160, 493 N.W.2d at 25.

Statutory construction involves a question of law and is reviewed de novo. *See id.*; *State v. Nixa*, 121 Wis. 2d 160, 163, 360 N.W.2d 52, 54 (Ct. App. 1984). In determining legislative intent for multiplicity purposes, we consider the following factors: (1) the language of the statute, (2) the legislative history and context of the statute,[2] (3) the nature of the proscribed conduct, and (4) the appropriateness of multiple punishment for the conduct. *See Grayson*, 172 Wis. 2d at 160, 493 N.W.2d at 25–26; *State v. Tappa*, 127 Wis. 2d 155, 165, 378 N.W.2d 883, 887 (1985). We determine the legislature's intent by relying on a " 'common sense reading of the statute' that will give effect to 'the object of the legislature' and produce a result that is 'reasonable and fair to offenders and society.' " *Grayson*, 172 Wis. 2d at 162, 493 N.W.2d at 26 (quoted source omitted).

### 1. *Language of the Statute*

The first count against DeRango, as found in the State's amended information, was attempted child exploitation contrary to §§ 948.05(1)(a) and 939.32(1), STATS. Section 948.05(1)(a) provides that:

---

[2] Because neither party offers any legislative history particularly helpful in determining the appropriateness of multiple punishments under §§ 948.05 and 948.07, STATS., we choose not to address this factor any further.

Whoever does any of the following with knowledge of the character and content of the sexually explicit conduct involving the child is guilty of a Class C felony:

(a) Employs, uses, persuades, induces, entices or coerces any child to engage in sexually explicit conduct for the purpose of photographing, filming, videotaping, recording the sounds of or displaying in any way the conduct.

The attempt statute, § 939.32, adds that:

(1) Whoever attempts to commit a felony or a crime specified in s. 940.19, 940.195 or 943.20 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime . . . .

. . . .

(3) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

Reading §§ 948.05 and 939.32, STATS., together, we recognize the following elements of attempted child exploitation: (1) the defendant attempted to employ, use, persuade, induce, entice or coerce a child into engaging in sexually explicit conduct; (2) the child has not attained the age of eighteen years; (3) the defendant had the intent to photograph, videotape or otherwise record the sexually explicit conduct of the child; and (4) the defendant performed acts toward the commission of the crime of child exploitation which demonstrate unequivocally that he or she intended to and would have committed the crime but for the inter-

vention of another person or some other extraneous factor.

The second count against DeRango was child enticement pursuant to § 948.07(1), (3) and (4), STATS., which provides that:

> Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class BC felony:
>
> **(1)** Having sexual contact or sexual intercourse with the child in violation of s. 948.02 or 948.095.
>
> . . . .
>
> **(3)** Exposing a sex organ to the child or causing the child to expose a sex organ in violation of s. 948.10.
>
> **(4)** Taking a picture or making an audio recording of the child engaging in sexually explicit conduct.

Child enticement requires that: (1) the defendant caused or attempted to cause the child to go into a secluded place (vehicle, building or room); (2) the defendant caused or attempted to cause the child to go into a secluded place with intent to (a) have sexual contact or sexual intercourse with the child, (b) expose a sex organ to the child or cause the child to expose a sex organ, or (c) take a picture or recording of the child engaging in sexually explicit conduct; and (3) the child has not attained the age of eighteen years. *See* WIS J I—CRIMINAL § 2134.

DeRango argues that §§ 948.05 and 948.07, STATS., address only one criminal act—procurement or attempted procurement of a juvenile to engage in some type of sexual conduct. According to DeRango, what is

13

important is the "act of enlisting the participation of the juvenile." He contends that while there are numerous statutes punishing sexual activity with children, the legislature only intended one punishment for one act of procurement. We disagree.

As the State points out, neither § 948.05, STATS., nor § 948.07, STATS., plainly states whether the legislature intended the crimes to be mutually exclusive when applied to a single course of conduct. Although both statutes address the recording of children engaging in sexually explicit conduct, the language of the child exploitation statute focuses on the singular act of taking advantage of children for the purpose of making sexually explicit recordings. The statute punishes the employment, use, persuasion or coercion of a child to perform sex acts in front of a camera, and it "prohibits all forms of sexual exploitation of a child, whether the exploitation was remote or in the child's presence." *State v. Zarnke*, 215 Wis. 2d 71, 76, 572 N.W.2d 491, 493 (Ct. App. 1997), *rev'd on other grounds*, 224 Wis. 2d 116, 589 N.W.2d 370 (1999).

Although the child enticement statute also addresses the recording of a child engaged in sexual conduct, *see* § 948.07(4), STATS., the central concern of the statute is the removal of a child from the general public to a *secluded place* in order to facilitate various illegal conduct. The underlying acts, such as sexual contact, prostitution and making recordings of child sexual activity, are not the primary concern of § 948.07 because other statutes specifically address these crimes.

In two recent cases, we articulated the purpose of the child enticement statute:

[E]nticement of a child is "a social evil in and of itself regardless of the specific sexual motive which causes the defendant to act." The gravamen of the crime is not the commission of an enumerated act, but succeeding in getting a child to enter a place with intent to commit such a crime.

*State v. Hanson*, 182 Wis. 2d 481, 487, 513 N.W.2d 700, 702 (Ct. App. 1994) (quoted source omitted). In *State v. Church*, 223 Wis. 2d 641, 589 N.W.2d 638 (Ct. App. 1998), *review granted*, 225 Wis. 2d 487, 594 N.W.2d 382 (1999), we noted that "[t]he crime of enticement is completed . . . when a person causes, or attempts to cause, a child to go to a secluded place, regardless of whether any of the intended illegal acts is ever completed or attempted." *Id.* at 664, 589 N.W.2d at 648 (holding that a defendant who entices a child by giving him or her a controlled substance, *see* § 948.07(6), STATS., and by causing the child to expose his or her sexual organs, *see* § 948.07(3), can only be convicted of one count of child enticement). We are convinced that the purposes of §§ 948.05 and 948.07, STATS., are distinct, and thus we conclude that two discrete crimes are envisioned by the statutes.

### 2. Nature of the Proscribed Conduct and Appropriateness of Separate Punishment

Although DeRango recognizes that the statutes are worded differently, he claims that both seek to "attack the act of procurement." He maintains that each statute protects similar interests of the victim and the public—safeguarding against the employment or procurement of children to perform acts that are sexually explicit. Again, we disagree.

As previously discussed, sexual exploitation of a child involves the employment, persuasion or coercion

15

of a child in order to engage in sexually explicit acts for purposes of making recordings. The central concern is the use of children for purposes of making pornographic images and sounds.

Conversely, the child enticement statute looks to thwart individuals from causing a child to go to a secluded place in order to facilitate some illegal conduct, be it sexual, physical or mental harm. As the State suggests, the aim is to address the social evil of removing children from the protection of the general public, not to combat the enumerated acts. Our legislature has enacted statutes to address each of the enumerated acts under § 948.07, STATS. The child sexual exploitation statute is one example. Just as one may be convicted of sexual assault of a child under § 948.02, STATS., and child enticement with intent to have sexual contact with a child, *see* § 948.07(1), so may one be convicted of sexual exploitation of a child under § 948.05, STATS., and child enticement with the intent to take pictures of the child engaging in sexually explicit conduct, *see* § 948.07(4). Because the child exploitation statute addresses an enumerated act under the child enticement statute, we are convinced that the proscribed conduct of each statute is distinct.

In determining whether multiple punishment is appropriate, we look to whether there is a single act or course of conduct and whether the legislature, in creating two offenses, intended to protect different interests of the victim or the public. *See State v. Selmon*, 175 Wis. 2d 155, 165–66, 498 N.W.2d 876, 879 (Ct. App. 1993). We acknowledge that the charges of attempted child exploitation and child enticement are based on a single course of conduct—the February 9, 1997 telephone call requesting Jessica to perform sexual acts

16

before a camera. However, we find more compelling the legislature's intent to protect separate interests. As our decisions in *Hanson* and *Church* make clear, "enticement of a child is 'a social evil in and of itself regardless of the specific sexual motive which causes the defendant to act.' " *Hanson*, 182 Wis. 2d at 487, 513 N.W.2d at 702 (quoted source omitted). Child exploitation, on the other hand, specifically concerns the recording of children engaging in sex acts. Thus, we are satisfied that separate punishment is proper under each statute and we conclude that the separate charges were not multiplicitous.

## C. Other Acts Evidence

Next, DeRango asserts that the court erred in admitting into evidence videotapes and a handwritten list of female names and their ages allegedly corresponding to the videotapes. He claims that the films were not indicative of his intent or motivation to participate in the alleged conduct. He argues that the sexually explicit nature of the videos unfairly portrayed him as a "dirty old man." We conclude that the trial court did not err in admitting this evidence.

During the pretrial motion hearing, the State sought to introduce six amateur production or "homemade" videotapes found at DeRango's residence that depicted young women performing stripteases and sex acts. The State requested permission to play portions of two tapes and to introduce a handwritten list of names allegedly corresponding to the videos. The State argued that the evidence illustrated DeRango's motive and that it rebutted his defense that Jessica actually solicited him. The sex acts contained in the tapes were purportedly similar to the acts that DeRango had

asked Jessica to perform. The court permitted the evidence under § 904.04(2), STATS., ruling that

> the whole question in a case of enticement is the intent of the defendant. Now, to me if you have films that he was soliciting this young lady or asking her to participate in these films, and you have films which show the type of behavior that he was endeavoring to induce her to do, that certainly goes to . . . the issue of intent and his motive in making these statements to this young girl.

At trial, Beckman testified that he found videotapes with distinct lettering on them. The tapes contained various handwritten names on them, including "Theresa," "Cindy," "Abby" and "Vicki," and the words "Parkside," "Milwaukee College," "Visitor Exchange Czech Republic" and "Racine." In addition, a handwritten note included the words "Maranda-18, High School," "Katie-18-Ass," "High School Cheer Leader, Erica-17" and "Red Head Racine, Melissa, Big Black Dildo." Beckman testified that the tapes depicted women performing stripteases and sex acts in front of the camera. While some of the women appeared to be in their middle to late teens, Beckman was unable to confirm their exact ages. The State played portions of two tapes to the jury. One tape in particular showed a woman in her middle to late teens in a young girl's bedroom in which she states that although she is eighteen, the viewer could pretend that she is fourteen, fifteen or sixteen.

The admission of evidence is within the trial court's discretion, and we will affirm that exercise of discretion if the court's decision evidences the application of accepted legal standards to the facts of record.

18

*See State v. Wallerman,* 203 Wis. 2d 158, 162, 552 N.W.2d 128, 130 (Ct. App. 1996). "The general rule is to exclude evidence of other bad acts to prove a person's character in order to show that the person acted according to his character in committing the present act." *State v. Fishnick,* 127 Wis. 2d 247, 253, 378 N.W.2d 272, 276 (1985).

In *State v. Sullivan,* 216 Wis. 2d 768, 576 N.W.2d 30 (1998), our supreme court reiterated the three-step analysis that trial courts must follow in determining the admissibility of other acts evidence under § 904.04(2), STATS. First, evidence of other acts may be admissible when offered for the purpose of establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.; see Sullivan,* 216 Wis. 2d at 772, 576 N.W.2d at 32. Second, the evidence must be relevant under §§ 904.01 and 904.02, STATS. *See Sullivan,* 216 Wis. 2d at 772, 576 N.W.2d at 32–33. Third, its probative value must substantially outweigh the danger of unfair prejudice or confusion of issues. *See* § 904.03, STATS.; *Sullivan,* 216 Wis. 2d at 772–73, 576 N.W.2d at 33.

We agree with the trial court that the videotapes were offered for the purpose of establishing DeRango's motive and intent. Jessica, who was fifteen years old at the time, specifically testified that he offered her $300 if she would perform a striptease and other sex acts in front of a camera. DeRango also "hinted at" her having sex with an older man, presumably himself or a friend. Jessica indicated that she believed the filming would take place at his or a friend's house.

Similarly, the videotapes depicted young women engaging in stripteases and sex acts. Some of the women appeared to be in their middle to late teens, although this was not established as fact. One of the

young women was shown in a bedroom. The videotapes were "homemade," not commercially produced. Additionally, a handwritten note was found to contain names of women and their ages, including one woman who was presumably seventeen. The note allegedly corresponded to the videotapes. We are satisfied, based on these similarities, that the tapes and the handwritten note were offered for the permissible purpose of showing DeRango's motivation to commit the charged crimes.

Next, in examining the relevance of the disputed evidence, *Sullivan* first instructs us to consider whether the evidence relates to a fact or proposition of consequence to the determination of the action. *See id.* at 772, 576 N.W.2d at 32–33. Here, the videotapes contained material that specifically relates to DeRango's intent to commit crimes of child exploitation and child enticement. The existence of the tapes at his residence corresponds to an interest in the material depicted in the tapes. The fact that the tapes were homemade and that the images depicted young women performing stripteases and sex acts relates to a plan to make similar homemade videotapes. Because at least one of the tapes depicted a woman in a bedroom, such footage corresponds to an intent to cause another to go into a room or secluded place. We are therefore satisfied that the evidence was offered to prove DeRango's criminal intent.

The second relevancy consideration under *Sullivan* concerns the probative value of the evidence, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more or less probable than without the evidence. *See id.* at 786, 576 N.W.2d at 38. "The probative value of the other acts evidence . . . depends on the other incident's nearness

in time, place and circumstances to the alleged crime or to the fact or proposition sought to be proved." *Id.* The probative value looks to the similarity between the other acts and the charged offense. *See id.* "The stronger the similarity between the other acts and the charged offense, the greater will be the probability that the like result was not repeated by mere chance or coincidence." *Id.* at 786–87, 576 N.W.2d at 38.

In the present case, the other acts evidence is DeRango's possession of the videotapes. The tapes involved the videotaping of young women performing strip-teases and other sex acts in a secluded place. DeRango requested the same of Jessica. Rather than merely suggesting that DeRango had the propensity to commit the crimes of child exploitation and child enticement, the tapes permitted the jury to infer that DeRango actually had the intent and motive to entice and exploit Jessica by recording her engaged in sexually explicit conduct in a private location. "[W]hile we do not permit a jury to infer that because a defendant committed prior act X, he is therefore of such a character and disposition to commit present act Y, the law does allow, under the proper circumstances, a jury to infer from act X a defendant's motive, intent, etc. with respect to act Y." *Fishnick,* 127 Wis. 2d at 254, 378 N.W.2d at 276. We are satisfied that the tapes were of probative value.

DeRango, however, counters that because the State could not prove that any of the women in the tapes were under the age of eighteen, the tapes were not probative of an intent to entice or exploit a child. We cannot agree. Other acts evidence need not be identical to the charged conduct. Rather, the probative value lies in the *similarity* between the other acts and the charged crime. *See Sullivan,* 216 Wis. 2d at 786–87, 576 N.W.2d at 38. Here, the tapes did address most of

the elements of the charged offenses. While it was not established that any of the women were under age eighteen, there was testimony that several looked as though they were in their middle to late teens. In addition, DeRango's handwritten note contained what appeared to be the ages of the women, one of whom was apparently seventeen. Furthermore, one woman stated that although she was eighteen, the audience could pretend that she was younger. Therefore, the nature of the videotapes suggests that DeRango was interested in teenage women. We conclude that because the tapes revealed sexual conduct very much like the acts DeRango contemplated of Jessica, the evidence had probative value.

Finally, we must ask whether the probative value substantially outweighs the danger of unfair prejudice. DeRango argues that the tapes aroused a sense of disdain for him and appealed to the jury's sense of morality and public decency. He contends that the prejudicial nature of the evidence was unfairly exacerbated by the following remarks made by the State in closing arguments:

> He was going to take her to one of those places, a room, a secluded place. As we saw in these videotapes, these appeared to be in private homes. These homemade videotapes. . . . Homemade videotapes that were not out in the park or in the middle of the street, in a home or secluded place.
>
> . . . .
>
> What did we find? We know there's other participants, because [the] defendant wouldn't reveal who made those tapes. We found this lovely note with names on it and dates—or ages rather and the word ass by Katie. Erica 17, Maranda, 18 high school. Along the edge here Milwaukee College.

> High school cheerleader, Erica, 17. Redhead, Racine, Melissa, big, black dildo, and what is that? As officer Beckman stated, he found correlations with these names and these tapes. These home-made videotapes, and you saw the videos, ladies and gentlemen. That's further evidence of his intent.
>
> . . . .
>
> Had she been one of [the young women in the video-tapes], she'd be on one of these videos, and because she's not on one of these videos does not make him less guilty. He's still guilty of these crimes of enticement.

"Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Id.* at 789–90, 576 N.W.2d at 40.

We first note that the trial court properly instructed the jury regarding the videotapes:

> Specifically, evidence has been received that the defendant had in his possession videotapes showing sexually explicit conduct and a handwritten list. If you find that this conduct did occur, you should consider it only on the issues of motives, opportunity, intent, and preparation or plan.
>
> You may not consider this evidence to conclude that the defendant has a certain character or certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

By delivering a cautionary instruction, the trial court can minimize or eliminate the risk of unfair prejudice.

*See State v. Kourtidias,* 206 Wis. 2d 574, 582–83, 557 N.W.2d 858, 862 (Ct. App. 1996).

On the one hand, the sexually explicit nature of the tapes likely provoked a strong reaction from the jury. The State noted the names of the women printed on the tapes and pointed out DeRango's handwritten note that apparently indicated the ages of the women and the material contained in the tapes. The State also played portions of the tapes. On the other hand, the nature of the crimes was highly sensitive to begin with. While it is likely that the note containing the words "Erica-17," "Katie-18-Ass" and "Melissa, Big Black Dildo" aroused a sense of disgust in the jury, such evidence addressed DeRango's interest in videotaping sexually explicit conduct.

Although we are unable to view the portions of the tapes played for the jury, the following colloquy suggests that when the State played the tapes it omitted the sexually explicit material and merely described it to the jury:

> Q. Detective Beckman, while you're changing that film, does that film continue with similar conduct?
>
> A. Yes, it does.
>
> Q. And what does the young woman do for the rest of the film?
>
> A. She ends up taking off the remaining clothing that she has on, engaged in self masturbation, and sexual acts with herself, and then it ends up with her taking a bath.
>
> . . . .
>
> Q. [With respect to the second videotape,] [w]hat did she continue to do in that video?

A. She continues with taking off different items of clothing. She does not engage in any masturbation, but she does get nude, and ultimately her episode ends with her taking a bath.

In its closing argument, the State also indicated that the most inflammatory material was left out:

You have to find only that [DeRango] tried to get [Jessica] to engage in some type of conduct, whether it be masturbation, as Detective Beckman stated happened in these videos later on. We didn't have you watch that part.

By seeking to eliminate the sexually explicit content, the State was careful to balance its need to present relevant evidence with DeRango's interest in not being painted a sexual deviant.[3] We are persuaded that the State did not use improper means in proffering its evidence. 

We conclude that the trial court properly exercised its discretion in admitting the other acts evidence.

### D. Amended Information

When the State amended the child enticement count under § 948.07, STATS., it added subsecs. (3) and (4) to the original charge under subsec. (1).[4] Count two was therefore changed to include intent to have sexual contact or sexual intercourse (subsec. (1)), intent to expose a sexual organ to Jessica or to cause her to

---

[3] We note that DeRango does not specifically complain that the nature of the footage played for the jury was offensive or likely to have aroused a sense of horror in the jury.

[4] Although the child exploitation count was also amended to attempted child exploitation, DeRango does not contest this change.

expose a sexual organ (subsec. (3)), and intent to take a picture or make an audio recording of her engaging in sexually explicit conduct (subsec. (4)). After the amended information was filed, DeRango objected on the grounds that amending the information after the evidence was presented did not comply with the requirements under § 971.29, STATS., and that he could not defend against these charges because he had not received notice until after he had presented his defense. The trial court rejected his argument, stating that because DeRango knew he was being charged under § 948.07, the addition of subsecs. (3) and (4) was "in conformance with the evidence that's been brought in." DeRango renews his objection.

Section 971.29(2), STATS., permits the amendment of criminal charges at trial in order "to conform to the proof where such amendment is not prejudicial to the defendant." *Id.*; *see State v. Gerard*, 189 Wis. 2d 505, 517 n.9, 525 N.W.2d 718, 722 (1995). "When an amendment to the charging document does not change the crime charged, and when the alleged offense is the same and results from the same transaction, there is no prejudice to the defendant." *Gerard*, 189 Wis. 2d at 517 n.9, 525 N.W.2d at 722; *see State v. Koeppen*, 195 Wis. 2d 117, 123, 536 N.W.2d 386, 389 (Ct. App. 1995).

In amending count two, the State did not change the crime with which DeRango was charged. In *Church*, this court recently determined that a defendant who entices a child into a secluded place with intent to commit separate acts under § 948.07, STATS., may only be convicted of one count of child enticement. *See Church*, 223 Wis. 2d at 664, 589 N.W.2d at 648. There, as we noted earlier, we explained that the essence of the child enticement statute is not the commission of an illegal act, but getting a child to enter a

place with intent to commit such a crime. *See id.* Section 948.07 "renders criminal the act of enticement. Its purpose is not to provide additional punishment for commission of the intended wrongful acts." *Church,* 223 Wis. 2d at 664, 589 N.W.2d at 648.

Here, DeRango was not prejudiced by the amended information because the amendment did not change the crime. The additional intentional acts under subsecs. (3) and (4) pertained to "[e]xposing a sex organ to the child or causing the child to expose a sex organ" and "[t]aking a picture or making an audio recording of the child engaging in sexually explicit conduct." These additional acts do not alter the crime of enticement because the focus of the crime is luring a child into a secluded place to take advantage of him or her sexually, physically or mentally. As long as one of the intentional acts within subsecs. (1) through (6) is found, a defendant can be convicted of enticement.

Even if the amended charge were considered to be different from the original charge, DeRango had notice of the elements involved. Under the initial count of child enticement, only subsec. (1) was referenced, which pertains to sexual contact and intercourse. However, DeRango was also charged with child exploitation, which requires the State to prove intentional employment, use, enticement or coercion of a child to perform "sexually explicit conduct for the purpose of [recording such acts]." Section 948.05(1)(a), Stats. Because exploitation requires proof of filming, recording the sounds of or displaying sexually explicit conduct, *see id.*, this offense mirrors the added charge under § 948.07(4), Stats., which involves "[t]aking a picture or making an audio recording of the child engaging in sexually explicit conduct." Also, the original counts contained the terms "sexually explicit

conduct"[5] and "sexual intercourse,"[6] which encompass, by definition, "[e]xposing a sex organ . . . or causing [another] to expose a sex organ," as found under § 948.07(3). Therefore, because the original charges against DeRango encompassed the substance of the amended child enticement count, we are persuaded that he had notice of the amended charge.

We next consider whether the alleged offense resulted from the same transaction. *See Gerard*, 189 Wis. 2d at 517 n.9, 525 N.W.2d at 722. Without doubt, all of the charges—whether contained in the original or amended information—refer to DeRango's February 9, 1997 phone call. The addition of subsecs. (3) and (4) of § 948.07, STATS., does not contemplate any other acts

---

[5] "Sexually explicit conduct," as used in § 948.05(1)(a), STATS., is defined as "actual or simulated":

> (a) Sexual intercourse, meaning vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by a person or upon the person's instruction. The emission of semen is not required;
>
> (b) Bestiality;
>
> (c) Masturbation;
>
> (d) Sexual sadism or sexual masochistic abuse including, but not limited to, flagellation, torture or bondage; or
>
> (e) Lewd exhibition of intimate parts.

Section 948.01(7), STATS.

[6] "Sexual intercourse," as found in § 948.07(1), STATS., refers to

> vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required.

Section 948.01(6), STATS.

28

by DeRango. Rather, the enumerated acts under § 948.07 are "part and parcel" of DeRango's criminal conduct. *See Koeppen*, 195 Wis. 2d at 124, 536 N.W.2d at 389.

Thus, because the amendment to the charging document did not alter the crime charged, and because the alleged offense resulted from the same transaction, we must conclude that the amended information did not prejudice DeRango.

## E. Lesser Included Offense

DeRango argues that the trial court erred in refusing to instruct on a lesser included offense for count two. He is mistaken.

The child enticement statute reads, "Whoever, with intent to commit any of the following acts, causes or *attempts to cause* any child . . . to go into any . . . secluded place . . . ." Section 948.07, STATS. (emphasis added). Because the statute as written includes the attempted as well as the completed act, it already contemplates a lesser included offense. Both child enticement and attempted child enticement are subject to the same penalty under § 948.07. The trial court could not instruct on a lesser included act because, quite simply, one cannot "attempt to attempt to cause." As we noted in *Huebner v. State*, 33 Wis. 2d 505, 513, 147 N.W.2d 646, 650 (1967),[7] "some crimes cannot by

[7] In *Huebner v. State*, 33 Wis. 2d 505, 147 N.W.2d 646 (1967), our supreme court held that a defendant could "attempt to entice" under an earlier version of § 948.07, STATS. At that time, the child enticement statute read, "Any person 18 years of age or over, who, with intent to commit a crime against sexual morality, *persuades or entices* any child under 18 years of age

their nature be combined with the general attempt statute." This is one of them.

## F. Sufficiency of the Evidence

DeRango maintains that the evidence presented at trial was insufficient to prove either charge. Because we conclude that the evidence was sufficient to prove an attempt under both counts, we disagree.

An appellate court may not reverse a trial court's conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." *Id.* at 507, 451 N.W.2d at 758.

The charges against DeRango involve criminal attempt. In *State v. Stewart*, 143 Wis. 2d 28, 420 N.W.2d 44 (1988), our supreme court instructed that attempt requires (1) intent to commit a specific crime and (2) evidence that the accused has committed sufficient acts to "demonstrate unequivocally that it was improbable the accused would desist of his or her own

into any vehicle, building, room or secluded place . . . ." Section 944.12, STATS., 1967–68 (emphasis added). Since *Huebner*, the legislature has changed "persuades or entices" to "causes or attempts to cause." *See* 1987 Wis. Act 332, § 55. Thus, while the general attempt statute was properly employed to the child enticement statute in 1967, it cannot apply today.

free will. The intervention of another person or some other extraneous factor that prevents the accused from completing the crime is not an element of the crime of attempt." *Id.* at 31, 420 N.W.2d at 45. The court further explained:

> The purpose of the language in sec. 939.32(3) relating to intervention of another person and extraneous factor is to denote that the actor must have gone far enough toward completion of the crime to make it improbable that he would change his mind and desist. The conduct element of sec. 939.32(3) is satisfied when the accused engages in conduct which demonstrates that only a circumstance beyond the accused's control would prevent the crime, whether or not such a circumstance actually occurs. An attempt occurs when the accused's acts move beyond the incubation period for the crime, that is, the time during which the accused has formed an intent to commit the crime but has not committed enough acts and may still change his mind and desist. In other words the statute requires a judgment in each case that the accused has committed sufficient acts that it is unlikely that he would have voluntarily desisted from commission of the crime.

*Id.* at 41–42, 420 N.W.2d at 49–50.

We are satisfied that there was sufficient evidence to support the jury's verdict on the attempted child exploitation count. Jessica's testimony is largely undisputed. On her first meeting with DeRango, she told him that she was in the tenth grade, and he later stated his belief that she was between fifteen and seventeen years of age. When he called her two days later, he offered her $300 to perform a striptease and sex acts for the purpose of creating a pornographic videotape. He also suggested that she would engage in sex acts with

31

himself or his friends in front of a camera. In addition to Jessica's testimony, DeRango's homemade videotapes evidenced his intent to film her performing sex acts because they depicted precisely the same sexual conduct he proposed of Jessica. While the State could not affirmatively prove that any of the females in the tapes were under age eighteen, one woman was filmed in a young girl's bedroom where she stated that the audience could pretend that she was fourteen, fifteen or sixteen, and another woman appeared to be in her middle to late teens. We are convinced that the elements of attempted child exploitation were encompassed by the evidence and that the evidence was not so lacking in probative value that no jury acting reasonably could have found guilt beyond a reasonable doubt.

DeRango argues, however, that because he said he would call her back but did not, there was "not a shred of evidence that he intended to or would have committed the crime, except for intervention of another person or an extraneous factor." While *Stewart* makes clear that the intervention of another person or an extraneous factor is not an element of attempt, we nonetheless find this factor determinative.

Jessica's refusal to meet with DeRango constituted "the intervention of another person." Her rejection of his offer was beyond his control and prevented him from completing the crime. DeRango did not voluntarily abandon his effort to videotape Jessica because it was her refusal that thwarted his completion of the crime. Whether he called back is immaterial because the February 9 phone call, by itself, was a substantial act in furtherance of the crime. "Since all attempts to commit crimes are failures to do so, a failure excuses a

defendant who attempts a crime only when his actual attempt is incomplete, rather than unsuccessful." *State v. Dix,* 86 Wis. 2d 474, 483, 273 N.W.2d 250, 255 (1979) (quoted source omitted). DeRango's attempt was unsuccessful, not incomplete. Thus, we conclude that DeRango had the requisite criminal intent and took acts in furtherance of the intent to commit child exploitation.

As to the child enticement charge, DeRango contends that no evidence existed to show that he attempted to cause Jessica to go into a secluded place. This is not true. Jessica testified that he told her he would "come pick [her] up and take [her] somewhere to shoot [the video]." When questioned again about the location, she stated, "If I remember right, I think he said his house. Film at his house or one of his friend's house." DeRango presented no evidence that called into question her testimony. We are therefore satisfied that this evidence was sufficient for a reasonable jury to conclude that DeRango intended to cause Jessica to go into "any vehicle, building, room or secluded place" pursuant to § 948.07, STATS. Thus, we reject DeRango's sufficiency argument.

### G. Unanimity on Count Two

Finally, DeRango argues that count two of the information, charging him with child enticement, and the substantive jury instruction denied him the right to a unanimous jury verdict as guaranteed by Article I, Section 5 of the Wisconsin Constitution.

The State replies that DeRango's argument was waived because he failed to raise an objection at trial. While we agree that the objection was waived, we none-

theless address the issue and conclude that DeRango was not denied his right to a unanimous verdict.

A party who fails to object to errors in a proposed jury instruction during conference at trial waives his or her right to raise the issue on appeal. *See* § 805.13(3), STATS. In *State v. Green*, 208 Wis. 2d 290, 303–04, 560 N.W.2d 295, 300 (Ct. App. 1997), we concluded that a party waived its unanimity argument by failing to raise a timely objection at trial. In the present case, however, we choose to address the issue on the merits because "it is one of sufficient public interest to merit decision." *Wirth v. Ehly*, 93 Wis. 2d 433, 444, 287 N.W.2d 140, 146 (1980) (quoted source omitted).

A defendant is entitled to unanimity with respect to the ultimate issue of guilt or innocence. *See Holland v. State*, 91 Wis. 2d 134, 143, 280 N.W.2d 288, 292–93 (1979). Unanimity, however, is not required "with respect to the alternative means or ways in which the crime can be committed." *Id.* at 143, 280 N.W.2d at 293.

In addressing a unanimity claim, we follow a two-step analysis. The first step is to determine whether the statute creates only one offense with alternative means of commission or whether the statute creates multiple offenses defined by each distinct felony the defendant intended to commit. *See State v. Hammer*, 216 Wis. 2d 214, 219, 576 N.W.2d 285, 286 (Ct. App. 1997), *review denied*, 217 Wis. 2d 519, 580 N.W.2d 689 (1998); *State v. Lomagro*, 113 Wis. 2d 582, 587, 335 N.W.2d 583, 587 (1983). If the statute creates more than one crime, then the jury must be unanimous as to each crime. *See Hammer*, 216 Wis. 2d at 219, 576 N.W.2d at 286. If, however, the statute sets forth only one crime, with alternative modes of commission, jury

unanimity is required only if the separate modes of commission are conceptually distinct. *See id.* "Unanimity is not required if the acts are conceptually similar." *Lomagro*, 113 Wis. 2d at 592, 335 N.W.2d at 589.

DeRango was charged with one count of child enticement but with multiple modes of commission. The amended information reads as follows:

> COUNT TWO: [The defendant did] with intent to have sexual contact with Jessica E., age 15, or expose a sex organ to Jessica E., or cause Jessica E. to expose a sex organ, or take pictures of Jessica E. engaging in sexually explicit conduct, unlawfully attempt to cause her to go into a secluded place; contrary to Section 948.07(1), (3) and (4), Wis. Stats.

The language of § 948.07, STATS., indicates that the intentional acts under subsecs. (1), (3) and (4) provide alternative means of committing one offense of enticement. *Cf. Hammer*, 216 Wis. 2d at 220, 576 N.W.2d at 286–87 (reviewing the language of the statute as the first of four *Manson v. State*, 101 Wis. 2d 413, 422, 304 N.W.2d 729, 734 (1981), factors in deciphering the legislature's intent). The statute provides, "Whoever, with intent to commit *any of the following acts*, causes or attempts to cause any child . . . to go into any . . . secluded place is guilty of a Class BC felony." Section 948.07 (emphasis added). Because the "intent to commit" element applies to "*any* of the following acts," it is inconsequential which act or acts the accused intended to commit.

Case law also indicates that the listed acts of § 948.07, STATS., are simply different means to commission. *Hanson* provides that "[t]he gravamen of the crime [of enticement] is not the commission of an enumerated act, but succeeding in getting a child to enter a

35

place with intent to commit such a crime." *Hanson*, 182 Wis. 2d at 487, 513 N.W.2d at 702. In *Church*, we noted that "[t]he crime of enticement is completed . . . when a person causes, or attempts to cause, a child to go to a secluded place, regardless of whether any of the intended illegal acts is ever completed or attempted." *Church*, 223 Wis. 2d at 664, 589 N.W.2d at 648. There, we concluded that the accused had "enticed one child, one time, into one hotel room." *Id.* at 663, 589 N.W.2d at 647. Similarly, DeRango attempted to cause one child, at one time, to enter a secluded place for the purpose of taking advantage of her sexually.

Because § 948.07, STATS., sets forth only one crime, we next determine whether the alternative means of commission are conceptually distinct. In instructing the jury on enticement, the trial court restated count two of the information and then instructed that child enticement requires that

> the defendant attempted to cause Jessica [ ] to go into a vehicle or building or room or secluded place with intent to have sexual contact with Jessica [ ], expose a sex organ to Jessica [ ], cause Jessica [ ] to expose a sex organ or take pictures of Jessica [ ] engaging in sexually explicit conduct.

In *Hammer*, we reviewed a defendant's claim that a jury instruction of burglary violated his right to a unanimous verdict. The instruction provided the following:

> The fourth element requires that the defendant entered the building with the intent to commit a felony. . . . A first degree sexual assault is a felony, an armed robbery is a felony, a substantial battery causing substantial bodily harm to another without

36

consent and with intent to cause bodily harm or substantial bodily harm is a felony.

*Hammer*, 216 Wis. 2d at 217–18, 576 N.W.2d at 286. This court concluded that the intent to commit each of the felonies listed was not conceptually distinct because the legislature focused on the *intent* to commit a felony, each of the enumerated felonies "provides the predicate intent element," and the penalty is identical no matter which underlying felony was intended. *See id.* at 222, 576 N.W.2d at 287.

We find *Hammer* instructive to this case. The primary concern of the enticement statute, as both *Hanson* and *Church* establish, is not the particular enumerated act but the causing or attempting to cause a child to enter a secluded place by one intending to exploit the child sexually, physically or mentally. The punishment is the same whether the defendant intends to commit one or all of the enumerated acts. Thus, because we conclude that the statutes are conceptually similar, we hold that DeRango was not entitled to a unanimity instruction.

*By the Court.*—Judgment and orders affirmed.